.IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL CASARES and KARINA CASARES, | |
| Plaintiffs, | |
| v. | No. 08 C 4198 |
| OFFICER BERNAL, Star No. 12254, OFFICER SZUBSKI, Star No. 4443, OFFICER VERDIN, Star No. 2913, OFFICER LEACH, Star No. 4927, OFFICER WILLIAMS, Star No. 2999, OFFICER CALVO, Star No. 15753, OFFICER PARTYKA, Star No. 10596, and the CITY OF CHICAGO, | MAGISTRATE JUDGE KIM |
| Defendants. | |

## PLAINTIFFS' MOTIONS *IN LIMINE*

NOW COME Plaintiffs, by and through his attorneys, Nick Albukerk, Esq., Leah Selinger, Esq., and Dan Dorfman, Esq., pursuant to the Federal Rules of Evidence and Federal Rules of Civil Procedure, moves this Court *in limine* for an order precluding and/or barring the Defendants, their attorneys, witnesses, or others from introducing evidence and mentioning in the presence of the jury the below matters.

### 1.    Evidence/Argument As To An Apology

A technique frequently used by certain defense counsel is to apologize on behalf of their clients with regard to an injury sustained by a plaintiff. In this fashion, defendants hope to have an apology, warmly presented, to inure to the benefit of their clients. The same can be said of officers who testify at trial. An apology absent an admission of liability is not be relevant to any issues or claims in this case but is calculated toward garnering sympathy from the jury so that the jury will reduce its award. An apology will

not resolve the issues that lie at the core of this action --- whether the Defendant Officers used excessive force on the Plaintiffs or failed to intervene in the use of excessive force. It is geared inappropriately to mitigate damages.

**2.**     **Evidence/Argument as to the Interviewing of Witnesses**

Attorneys for Plaintiffs have interviewed multiple witnesses to the events that are the subject of this litigation. These interviews were conducted with the sole purpose of fact-gathering and are permissible. Indeed, Seventh Circuit Pattern Jury Instruction No. 1.16 explicitly states that it is "proper for a lawyer to meet with any witness in preparation for trial." Any suggestion or implication that Plaintiffs' counsel acted improperly during these interviews should be excluded from evidence at trial. *See* Fed. R. Evid. 403.

**3.**     **Prior Arrests/Criminal Involvement and/or Convictions of Plaintiffs**

Plaintiffs have prior criminal histories and respectfully request that the Court bar or preclude any evidence of criminal involvement and/or convictions that Defendants may seek to present. None of the prior convictions involve lying or misstating facts and thus, the credibility of the Plaintiffs as truthful witnesses is not at issue.

The only possible use by Defendants for introducing evidence of the prior conviction is as improper character evidence aimed at diminishing Plaintiffs as human beings in the eyes of the jury and to make them out to be of bad characters. Such a use is a deliberate prejudicial attack on the Plaintiffs. *See* Fed. R. Evid. 402, 403, and 404. Evidence related to a person's character or a trait of character is inadmissible unless it falls under one of the exceptions enumerated in Fed. R. Evid. 404. *See Strong v. Clark*, 1990 WL 70421, *2 (N.D.Ill. 1990)(prior criminal behavior is inadmissible to prove a

party's bad character); *Lovergine v. Willerth,* 1986 WL 10352, *2 (N.D.Ill. 1986)(holding that a party's previous arrests are precisely the type of evidence Fed. R. Evid. 404 is designed to exclude). This is because this type of evidence is more prejudicial than probative. *See Brandon v. Village of Maywood*, 179 F.Supp.2d 847, 854 (N.D.Ill. 2001)(past arrest inadmissible to show bias because potential for unfair prejudice outweighs any probative value).

Therefore, Plaintiffs pray that this Court, pursuant to Fed. R. Evid. 402, 403, and 404, preclude or bar from evidence any prior criminal history including prior arrests, criminal involvement and convictions of the Plaintiffs.

**4.      Evidence/Argument As To Defendant Officers' Commendations or Awards**

The Defendant Officers may have received commendations and/or awards in the course of their employment as Chicago police officers. However, such evidence is irrelevant to any issues in this case and is inadmissible under all the rules of evidence governing character evidence. *See* Fed. R. Evid. 404, 405, 607, 608, and 609. The probative value of such evidence is nil and the prejudice to the Plaintiffs substantial. Indeed, such evidence seems designed primarily to garner sympathy for the Defendants. *See* Fed. R. Evid. 403.

Character evidence in the form of past commendations and/or honors of the Defendant Officers is wholly unrelated and irrelevant to Plaintiffs' claims. Such evidence does not bear upon the issue of excessive force used by Defendant Officers. It is self-serving and catered to cast Defendant in a favorable sidelight. Indeed, character evidence is normally inadmissible in a civil rights case. *See Cohn v. Papke*, 655 F.2d 191, 193 (9th Cir.1981); Fed. R. Evid. 404. The sole questions to be resolved here are whether,

objectively, Defendant Officers used unreasonable force against the Plaintiff(s) that was excessive and/or failed to intervene when excessive force was employed. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Lastly, evidence of commendations and awards constitutes inadmissible hearsay and comes under none of the exceptions of the federal rules. *See* Fed. R. Evid. 801-804; *United States v. Nazzaro,* 889 F.2d 1158 (1st Cir. 1989); *United States v. Washington*, 106 F.3d 983 (D.C.Cir. 1997); *United States v. Barry*, 814 F.2d 1400, 1404 (9th Cir. 1987). Hence, it must be excluded from trial.

**5.      Allegations of Drug and/or Alcohol Use by Plaintiffs and/or any Witnesses**

Pursuant to Fed. R. Evid. 402, 403, and 404, Plaintiffs seek to exclude from trial any evidence, testimony or argument regarding the following:

1.   Pre-occurrence and/or post-occurrence allegations of drug use and/or possession of the Plaintiffs and or any witnesses called by Plaintiffs;

2.   Pre-occurrence and/or post-occurrence allegations and/or convictions of drug possession of any of Plaintiffs' relatives and/or acquaintances;

3.   Pre-occurrence and/or post-occurrence allegations and/or convictions relating to alcohol consumption of Plaintiffs or any witnesses called by Plaintiffs;

4.   Pre-occurrence and/or post-occurrence allegations and/or convictions relating to alcohol consumption of any of Plaintiffs' relatives and/or acquaintances.

Plaintiffs offer basically the same arguments as those set forth in Plaintiffs' motion *in limine* No. 3, above. Evidence related to a person's character or a trait of character is inadmissible unless it falls under one of the exceptions enumerated in Fed. R. Evid. 404(b). *See United States. v. Simpson,* 479 F.3d 492, 496-497 (7th Cir. 2007)(admission of evidence of prior unrelated drug sales constitutes plain error); *Strong v. Clark*, 1990 WL 70421, at *2 (N.D.Ill. 1990). Essentially, there is no legitimate

purpose for the introduction of drug or alcohol use by Plaintiffs or of witnesses that took place prior to or preceding the events of Plaintiffs' interaction with the Defendants. Because there is no probative value under Fed. R. Evid. 404(b) gained by exposing a jury to evidence of drug or alcohol use and such evidence would be highly prejudicial to Plaintiffs, the evidence should thus be excluded. *See* Fed. R. Evid. 403, 404(b).

**6.** **Hearsay contained in the Medical Records**

Medical records were generated for Plaintiff Daniel Casares's treatment at various medical facilities for the events of October 9, 2006. These records contain numerous hearsay statements. Hearsay is an out of court statement made for the truth of the matter asserted. *See* Fed. R. Evid. 801. Pursuant to Federal Rule of Evidence 802, hearsay statements are not admissible into evidence. *See* Fed. R. Evid. 802. Plaintiff's medical records frequently do not make clear who the declarant is; and therefore, any exception based on a party admission would be inapplicable.

Any hearsay accounts in Plaintiff's medical records are unfairly prejudicial and should be excluded. *See United States v. Pollard*, 790 F.2d 1309 (7th Cir. 1986)(portion of medical records identifying police officer as the person who twisted arm was inadmissible hearsay), *rev'd on other grounds*, *United States v. Sblendorio*, 830 F.2d 1382, 1393 (7th Cir. 1987); *Cook v. Hoppin*, 783 F.2d 684, 689-90 (7th Cir. 1986) (hearsay in medical records does not fit under business record exception and should be excluded, including the situations when a patient relates his own medical history or when members of the patient's family or friends make statements regarding the patient's medical history). Further, because all of the declarants involved are in fact available to testify first-hand, reliance on potentially inaccurate hearsay accounts is unnecessary. *See*

*United States v. Cherry*, 938 F.2d 748, 757 n.18 (7th Cir. 1991)(noting Judge Flaum's advocacy of a rule requiring demonstration of the declarant's unavailability when offering statements under the medical diagnosis exception), *citing Nelson v. Farrey*, 874 F.2d 1222, 1232 (7th Cir. 1989) (Flaum J., concurring). By relying on in-court testimony rather than pure hearsay, any statements which are found to be based upon hearsay rather than personal observation can be more effectively screened. *See Cook*, 783 F.2d at 690-91 (medical record declarant's statements themselves may have been based on hearsay).

Any hearsay in Plaintiff's medical records should be precluded or barred from evidence pursuant to Fed. R . Evid. 802.

## 7.    **Collateral Payments of Medical Expenses**

Plaintiff Daniel Casares incurred medical bills as a result of his treatment at Northwestern Memorial Hospital on October 9, 2006. Any payments or reimbursements by third parties of any of Plaintiff's medical bills should be excluded pursuant to the universally-accepted collateral source rule. *See Carter v. Berger*, 777 F.2d 1173, 1175 (7th Cir. 1985)(holding that the "collateral benefit rule of tort law rests on the belief that the wrongdoer should be made to pay-the better to deter like conduct-whether or not the victim has providently supplied another source of compensation, unless the supplier of the compensation has a subrogation clause")(internal quotations omitted); *National Labor Relations Board v. Marshall Field & Co.*, 129 F.2d 169, 172 (7th Cir. 1942)("The wrongdoer may not be benefited by collateral payments made to the person he has wronged."). Any mention or evidence of insurance payments or other collateral source of payments for Plaintiff's medical bills should be precluded from evidence.

**8.**     __Any Mention of Taxpayer Liability or Higher Taxes__

Plaintiffs move this Court for an Order *in limine* precluding from the trial any testimony, evidence, or argument indicating that taxpayers should not be held liable for the incident that occurred on October 9, 2006. References to taxes or taxpayer payments will improperly influence a jury to deliberate on bases other than the evidence presented at trial. If a jury hears reference regarding tax increases or taxpayer liability, a juror would be motivated to rule in favor for Defendants for their own personal financial interests of ensuring that their taxes are not raised, – regardless of the facts presented at trial. Such references could also encourage jurors to decrease any award for Plaintiffs. For these reasons, any reference to taxes or taxpayer liability should be precluded from evidence and argument.

**9.**     __If Defendants Introduce Evidence Related to Defendant's Financial Position,__
           __Plaintiffs Should be Allowed to Introduce Evidence of Indemnification.__

Plaintiffs believe that Defendants may seek to introduce evidence and testimony regarding the financial status of the individual Defendant Officers and their purported inability to pay an award of punitive damages. The result of such evidence, if not the goal, is to suggest to the jury directly or indirectly that a verdict against Defendant Officers would lead to personal financial hardship. Relying on rulings of other Courts of this District and principles of basic fairness, Plaintiffs respectfully submit that if the Defendants introduce the financial status of the Defendant Officers into the trial of this action, Plaintiffs should be allowed to inform the jury that the Defendant Officers would not have to personally pay compensatory damages but that those damages would be paid by the City of Chicago

Illinois law provides that a "local public entity" such as the City of Chicago "is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable . . . ." 745 ILCS 10/9-102). The Seventh Circuit has long held that when defendants introduce evidence of their inability to pay a damages award, this "opens the door" to evidence of indemnification. *See Lawson v. Trowbridge*, 153 F.3d 368, 380 (7th Cir. 1998)(holding that when defendants focus on their "financial weakness," the district court should permit the plaintiff to inform the jury about the state's indemnification statute). Judge Posner has aptly cautioned that a "defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir.1996).

While *Lawson* dealt with Wisconsin's unusual policy of indemnification for punitive and compensatory damages, courts of the Northern District commonly apply the *Lawson* principle to federal civil rights cases against Illinois public entities and their employees. As Judge Conlon recently concluded, "If defendants open the door by introducing evidence that they are personally responsible for punitive damages, judges in this district generally permit plaintiffs to inform the jury that defendants will be indemnified for compensatory damages." *Hillard v. City of Chicago, Ill.*, 2010 WL 1664941, *4 (N.D.Ill. Apr. 23, 2010); *see also Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458, *4 (N.D.Ill. Mar.31, 2008)(Dow, J.)(same); *Galvan v. Norberg*, 2006 WL 1343680, *2 (N.D.Ill. May 10,2006)(Shadur, J.)("[D]efense counsel should be aware that if they plan to apprise the jury of the fact that the individual officers will have to bear

[punitive] damages out of their own pockets, fairness would require that the jury also be informed of the true situation (indemnification) as to compensatory damages*")*; *Mohr v. Chicago School Reform Bd. of Trustees*,155 F.Supp.2d 923, 929 (N.D.Ill. 2001)(Bucklo, J.)("[T]he Seventh Circuit allows in the evidence of indemnification once the defendants plead poverty, even if all damages, including punitive damages, are indemnified."); *Regalado v. City of Chicago*, 1998 WL 919712, *1 (N.D. Ill. Dec. 30, 1998)(Shadur, J.) (defense argument that a verdict against defendant officers would entail some personal financial hardship opens door to "showing that City would really bear the financial burden damage").

In *Mohr*, Judge Bucklo held that when defendants argued they "would suffer financial hardship if they had to pay a judgment," this "open[ed] the door to the fact of indemnification." *See Mohr*, 155 F.Supp.2d at 928, *citing Lawson*, 153 F.3d at 379. Judge Bucklo reasoned that the Seventh Circuit had not limited the principle it articulated in *Lawson* to Wisconsin's peculiar indemnification scheme. She also pointed out the fatal flaw in the argument that *Lawson* should not be applied to Illinois, where only compensatory damages are indemnified by the state: "The defendants' reasoning . . . makes no sense: why should they be able to plead poverty if they are to be partially indemnified, but not if they would be fully indemnified?" *Id.* at 929. To make sure the jury understood the limits of indemnification under Illinois law, Judge Bucklo specifically instructed the jury that the Board of Education could indemnify the defendants *only* for compensatory damages. *Id.*

Defendants may argue that a limiting instruction focusing on punitive damages would cure any potential unfairness in allowing the jury to hear only about the Defendant

Officer's financial condition. Plaintiffs would counter that once the genie is out of the bottle, it is impossible to limit where it will go. If the jury is informed that Defendants would have to personally pay punitive damages, but are told nothing about compensatory damages, they are left to wonder and speculate who pays the latter. Such speculation can only confuse and mislead the jury on the question of compensatory damages. Therefore, Plaintiffs respectfully request that this Court be guided by the general practice of Courts of this district and permit Plaintiffs to inform the jury as to who would pay for compensatory damages if Defendants open the door by putting the individual Officers' finances at issue in this case.

### 10. <u>Any Mention that Police Officer Risk Their Lives on the Job</u>

Defendants should be barred and/or precluded from arguing or presenting evidence or testimony that police officers risk their lives on the job. This evidence is not relevant and causes the jury to take their eyes off the ball - the facts of the case. While it is true that police officers may risk their life on the job at times, these risks are not relevant to the incident in question. As the risks are not relevant, the evidence should be inadmissible. Further, the fact that officers do have some risk in their job speaks to nature of their profession and does not meaningfully contribute to a determination of whether the Defendant Officers in this case used excessive force or failed to interfere when excessive force was being employed.

Plaintiffs submit that such evidence or testimony is inadmissible for similar reasons as evidence of commendations and awards. *See* Plaintiffs' Motion *in Limine* No. 4. Introducing testimony of the risks involved in a police officer's job simply bolsters the officers as character evidence and is a thinly-disguise way to suggest to the jury that

police officers are heroes, who should be viewed with particular sympathy and whose testimony should be given greater weight. Such evidence has no probative value regarding the disputed issues in this case and would be highly prejudicial to Plaintiffs. *See* Fed. R. Evid. 401, 403 and 404.

Alternatively, if Defendants are allowed to ask witnesses questions regarding the risks involved, they should not be allowed to make any arguments related to the general risk a police officer has on the job in their closing argument. The closing argument should focus solely on the facts of the case or reasonable inferences that can be drawn from the facts. *See Walden v. Illinois Central Gulf R.R.,* 975 F.2d 361, 365 (7th Cir. 1992). The risks that police officers may generally face on the job have no connection to the particular facts of this particular case and therefore should not be allowed. If Defendants are allowed to speak about the general on-the-job risks of police work, Plaintiffs should also be allowed to present evidence and argument about the abuses many police officer misconduct cases in the City of Chicago and nationwide, including cases in which officers have been found to engage in torture, severe beatings, theft and drug planting, among other wrongdoing. In addition, Plaintiffs should be able to present evidence and argument regarding specific acts of misconduct committed by the Defendant Officers in the past.

It should be clear that such discussions of the general circumstances involved in the work of the police officers are both a discursion and a diversion from what Section 1983 trials are supposed to be about – the dispassionate weighing facts and evidence in particular cases to determine whether the specific officers in those cases committee wrongdoing the particular plaintiffs in those cases. For Defendants' argument to be

offered to the jury, evidence would have to be admitted during trial. Plaintiffs submit that evidence regarding the daily activities of police officers and the extent to which officers risks their lives has little, if any probative value. As Plaintiffs have noted elsewhere in these motions, closing argument are supposed to be based on the facts presented at trial and reasonable inferences from the facts**.** Thus, in the absence of facts at trial, Defendants should be precluding from referencing in their closing argument the risks officers face on the job.

However, if the Defendants are allowed to introduce evidence that the Defendant Officers risk their lives every day, the Plaintiffs should be able to rebut this evidence with internal investigations that demonstrate otherwise, including sustained and unsustained allegations of misconduct. The "risk-their-lives-everyday" argument would thus open the doors to mini-trials about irrelevant issues. As Courts commonly abhor mini-trials, Plaintiffs pray that this Court prohibit argument and evidence that the Defendant Officers risk their lives on the job. Alternatively, if the Defendants open the door during the trial or in closing argument, Plaintiffs request an opportunity to rebut with the evidence noted above. If Defendants wait until closing arguments to raise this issue, then Plaintiffs ask this Court to allow Plaintiffs to read into the record evidence of bad conduct of the officers, including their internal investigations, without rebuttal. Plaintiffs also pray that this Court permit argument regarding Chicago Police Officers who have committed crimes, have been or are incarcerated for their crimes, the murder and torture of innocent civilians that Chicago Police Officers have committed, and the like.

**11.  The Purported "Financial Gain" Motive for Litigation**

American jurisprudence has established a civil system of justice that in which the primary means of relief and redress involves financial restitution. This system is based on the United States Constitution, federal laws and statutes such as 42 U.S.C. § 1983 and the common law. To attack this system of monetary relief at trial without basis and without evidence generates jury confusion and substantial prejudice against Plaintiffs.

Defendants commonly argue that "all the plaintiff wants is money" or "this is about money." This argument is unfairly prejudicial as it attacks the fundamental basis behind the legal system.  Indeed, courts commonly inquire of the venire if any prospective jurors have difficulty with the notion that financial compensation is to be awarded to a plaintiff if he can prove his case. If a member of the venire advises that he cannot follow that proposition, he will be excused for cause.

Additionally, setting forth this argument will lead Plaintiffs to discuss matters that are irrelevant to the case at hand. For example, Plaintiffs may have to discuss and lay the foundation for Section 1983 claims by reference to the United States Constitution, the origins and history of the Civil Rights Act of 1871, and the system of trial by jury that stands at the heart of the American judicial system. Plaintiffs would need to discuss the nature of such civil rights claims and the history and importance of allowing ordinary citizens to bring these actions in federal court. Lastly, Plaintiffs would have to note that no other relief is available to ordinary citizens whose Constitutional rights have been violated other then monetary relief. Citizens, for example, cannot obtain relief in the form of having a police officer fired in a police misconduct case nor would injunctive relief

ordinarily be available. In light of the fact that no other remedies are available under the law, demonizing the remedy that is provided by our system of justice undermines the legal system, confidence in the judicial process and the purposes of federal civil rights statutes such as Section 1983.

Furthermore, the argument that Plaintiffs have brought this lawsuit for monetary reasons and rather than to obtain justice for the harm that they suffered is irrelevant to the case at hand. Such a general claim does not connect to the underlying incident or the facts in the case – it is simply a way to prejudice the jury against any plaintiff who chooses to use the resources of the judicial system to obtain relief for the harm or injury he suffered.

The "They're Only in it for the Money" argument is particularly prejudicial in light of extensive media coverage and discussion about ordinary citizens purportedly receiving large sums of money for so-called frivolous claims. Defendants play to this stereotype when they argue that the underlying purpose of bringing a civil lawsuit is to obtain money. The probative value of references to the relief given by a civil lawsuit is minimal. This Court will instruct the jury regarding monetary damages and Defendants add nothing but prejudice and confusion with this argument. For all these reasons, Plaintiffs respectfully request that the Defendants be precluded from mentioning or arguing this proposition..

Alternatively, if Defendants are permitted to argue that civil cases are filed to obtain monetary relief then Plaintiffs should be able to introduce evidence that while a police misconduct civil case, if successful, may result in monetary relief the lawsuit may lead to the disciplining of and even the firing of the Defendant police officers. Plaintiffs should be able to introduce evidence that internal investigations and criminal

prosecutions can develop from civil trials against police officers, based upon evidence submitted (*i.e. United States v. Burge*).

Since, financial relief may be argued in this regard, Plaintiffs should be permitted to open up all the repercussions of filing a civil lawsuit, including the subsequent remedies that may be obtained by a verdict in favor the Plaintiffs. This also includes: sending a message to other officers to not engage in misconduct, settling cases versus going to trial, not wasting tax payer dollars on litigation, getting bad cops off the street. The list is endless.

If Defendants discuss that Plaintiffs' underlying motivation for bringing this civil lawsuit is to obtain money, then Plaintiffs should be allowed to further establish that the underlying motivations for the Defendants is to lie on the stand so as to prevent further investigation by the Independent Police Review Authority. Such motivation includes issues as related to the subsequent discipline that they may receive if they lose this lawsuit. To fully explore the extent of the defendant officers' motive to lie on the stand, one also has to take into account the previous discipline the officer has received. If for example, an officer has accumulated a record of significant disciple in the past, he may receive a greater repercussion by a verdict for the Plaintiffs, as it may affect his job security. As a result, to further explore the full credibility of the Defendant officer, one would have to look into any past disciple he has received and any ongoing investigation. In this case, Officer Verdin received a sustained finding of excessive force one year prior to the incident.

For all of the above reasons, Plaintiffs pray that this Court preclude argument and/or the introduction of evidence in this connection, *in limine*. If the Court allows evidence

and/or argument in this connection, Plaintiffs pray that either proofs be re-opened to allow further evidence reflected in this motion or argument be allowed to be developed as outlined in this motion, to rebut the prejudicial comments referable to this matter.

### 12. Testimony and Argument that the Neighborhood where the Incident Occurred is a "High Crime Area," "High Drug Area," or Other Similar Prejudicial Characterizations

Plaintiffs request that Defendants and their witnesses be barred from referring to the neighborhood where the incident in question occurred as a "high crime area," "drug area," "gang area," or other similar irrelevant and prejudicial characterizations of the area. During the officers' depositions, they did not testify that the neighborhood was a "high crime area" nor did they mention any account of high drug volume in that area.

If the officers' characterization of the neighborhood is based solely on the officers' subjective belief about the neighborhood, it is inadmissible under Federal Rule of Evidence 403, and has no relevance to the objective standard that governs when law enforcement officers possess reasonable and articulable suspicion that criminal activity is afoot in order to conduct an investigative search under *Terry v. Ohio. See* 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("[I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure of the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"). The Fourth Amendment's objective standard ensures that instances of police misconduct cannot later be justified as lawful based on the officer's subjective belief about the circumstances surrounding the interaction. The Fourth Amendment holds police officers to an objective standard and the defendant officers similarly must be held to this standard.

Moreover, evidence that the Plaintiffs purportedly have friends in a high crime, drug, or gang neighborhood creates an undue risk of unfairly prejudicing the Plaintiffs without any corresponding probative benefit. Until Defendants can satisfy the Court that there is some relevance other than unfair guilt by association, they should be barred from asking witnesses whether this was or was not a high crime, drug, or gang area. *See United States v. Irvin*, 87 F.3d 860, 865-66 (7th Cir. 1996) (observing the considerable danger of unfair prejudice from evidence that suggests guilt by association); *United States v. Doe*, 149 F.3d 634, 638 (7th Cir. 1998) ("[J]uries should not conclude that a particular defendant is guilty simply because the defendant shares some characteristics with a particular group."). Plaintiffs concede that officers are allowed to draw on their experiences and specialized training in making inferences and deductions based on the totality of the circumstances. *See United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

However, the totality of the circumstances can only be guided by objective information, and not simply on the officers' subjective beliefs that have no basis in fact. If the neighborhood is not objectively a "high crime area" as the defendant officers contend, then the officers' subjective beliefs about the neighborhood are irrelevant. Since the Defendants have failed to produce any relevant evidence that the neighborhood is objectively a "high crime area" and the officers cannot recall having any personal experience with making arrests on the block, defendants should be barred from concocting this after-the-fact justification for their unlawful arrest of the Plaintiffs.

If Defendants' attempts to color the block as a "high crime area" steeped in drugs, gangs, and guns it is an impermissible and unjustified attempt to pander to the fear of

jurors in order to justify their unlawful conduct. Therefore, any evidence or testimony regarding the neighborhood being a "high crime area" constitutes evidence that is vastly more prejudicial than probative of any legitimate issue in this trial and is inadmissible under Federal Rule of Evidence 403.

Plaintiffs respectfully request an order barring Defendants and defense counsel from referring to or posing questions regarding the neighborhood where Plaintiffs were on the date of the incident as a "high crime," "drug," or "gang" area without first satisfying the Court outside the presence of the jury that this testimony would have an admissible basis. Additionally, defense counsel should advise their witnesses to specifically refrain from mentioning, referring, or testifying thereto.

### 13. Evidence or Argument that the Photographs taken by Plaintiffs were Motivated by Hopes for Financial Gain

Plaintiffs anticipate that Defendants will attempt to argue that photographs taken of the Plaintiff Daniel Casares shortly after the incident demonstrate Plaintiffs' pecuniary motives in bringing this lawsuit. Plaintiffs respectfully request that this Court bar or preclude Defendants from making any such argument as speculative, irrelevant, and highly prejudicial.

More significantly, in the absence of evidence of inappropriate motive, Defendants should not be permitted to speculate about the motives of a litigant who seeks redress in the courts as is his right under the United States Constitution and presents evidence in support of his claims pursuant to federal rules of evidence and procedure. Defendants in Section 1983 cases certainly do not hesitate to use a plaintiff's photographs against him when the photos fail to show severe injuries. *See*, *e.g.*, *Henson v. Thezan II*, 717 F.Supp. 1330, 1331-1332 (N.D.Ill. 1989)(in motion to reconsider, defendants urge

summary judgment in part on the basis of "pictures . . . showing that the plaintiff had suffered no lasting physical injuries"); *Henson v. Thezan I*, 698 F.Supp 150, 151 (N.D.Ill. 1988)(defendants argue that line-up photos and mug shots of plaintiff showed he sustained no external injuries). Moreover, it is more than likely that if Plaintiff had *failed* to document his injuries, Defendants would argue that this was evidence his injuries were not severe. *See*, *e.g.*, *Brown v. Griffet*, 2010 WL 685898, *13 (C.D.Ill. Feb. 22, 2010)(in support of summary judgment motion, "Defendants argue that the Plaintiff himself offers no evidence to support his claim that he suffered from either cracked or broken ribs . . ."). Accordingly, Plaintiffs respectfully move this Court to bar or preclude Defendants from arguing or inferring any inappropriate motive regarding the fact that he documented his injuries with photographs taken shortly after the incident.

**14.     The "Anybody-Can-File-a-Lawsuit" Argument**

A technique commonly used by defense counsel is to argue in closing argument that anybody can walk in the court room door and file a lawsuit. Defendants commonly elaborate on this argument by stating that as a result of a Plaintiffs ability to easily file a lawsuit Plaintiffs receive "this court room, this judge, technical equipment and you the jury's time." This argument is made in the abstract and generates nothing but speculation. For example, at no time is evidence introduced at trial, as to:

> a. the costs for filing a lawsuit;
>
> b. who is responsible for the costs;
>
> c. that ECF training is necessary to file a lawsuit;
>
> d. that lawsuits must be filed consistent with FRCP Rule 11;
>
> e.  that lawsuits must withstand Rule 12 scrutiny;

f.  that lawsuits must survive *Ashcroft v. Iqbal,* 129 S.Ct. 1937(2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, (2009);

g.  that lawsuits must survive motions for summary judgment;

h.  that lawsuits must survive *motions in limine;*

i. that a federal trial practitioner must have tried at least five trials prior to being able to prosecute a case in Federal court;

j. that several thousand dollars are expended to engage in discovery (depositions, etc.);

k.  that written discovery must be answered etc.

In other words, this argument has had no factual support during the trial. Closing arguments are limited to the facts in evidence and reasonable inferences therefrom. *Walden v. Illinois Central Gulf R.R.,* 975 F.2d 361, 365 (7th Cir. 1992).  For this reason alone, Defendants should be precluded and/or barred from making said argument.

The "anybody can file a lawsuit" argument should also be precluded and/or barred because it is in complete degradation of legal process and disregards the entire litigation process.   This argument insinuates that Plaintiffs' claims are frivolous.  If true, this is an issue that should be brought in a motion to dismiss.  The decisions in *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) as well as Fed. R. Civ. P. 11 and 12(b) prevent plaintiffs from bringing frivolous lawsuits. Furthermore, through the discovery process and motions for summary judgment Defendants have yet further opportunities to dismiss Plaintiffs' claims. The legal process provides at a minimum three different avenues to ensure that a frivolous or completely baseless claim does not get to a jury.  Given these safeguards the Defendants should be precluded and/or barred from making the argument that anybody can come in a courtroom and file a lawsuit.  Likewise, since Defendants have not brought forth a rule

11 motion, motion to dismiss or motion for summary judgment they have thus waived this argument and should not be allowed to make the argument that anybody can file a lawsuit during closing argument. The Federal rules provide that it is too late in the litigation process to bring these arguments forward now. Under F. R. Civ. P. 12(b), a motion to dismiss *must* be filed prior to the filing of a responsive pleading[1]. Furthermore, under Fed. Civ. Rule 56(c), defendants may argue that the plaintiff's complaint present no genuine issues as to any material fact at the summary judgment stage. Rule 56(c) provides that "a party may move for summary judgment at any time until 30 days after the close of all discovery." Defendants had ample opportunity to bring forth any summary judgment arguments after the close of discovery, and thus should be barred from bringing forth a summary judgment argument in closing argument. Lastly, it is axiomatic that the Plaintiffs do not get a court room or a judge or court reporter, for filing a lawsuit. Hence, Plaintiffs seek to preclude this specious argument.

In addition, the argument is made in a one-sided, prejudicial context. If plaintiffs in Section 1983 cases get a "free pass" to the courthouse, as Defendants' argument implies, surely the jury is entitled to know that the Defendant Officers get a "cost-free" defense. Chicago police officers, unlike most defendants in civil cases, do not have to pay their attorneys; the City of Chicago provides them cost-free representation. Defendant Officers do not have to pay any litigation costs; the City of Chicago does that for them.

---

[1] "A motion asserting any of these defenses **must** be made before pleading if a responsive pleading is allowed." *Id.* (emphasis added); *Hernandez v. Central Die Casting, Inc., Local No.,* 1997 WL 627651, *4 Fn14 (N.D. Ill. 1997)(noting that defendant's motion for attorneys fees, which asserted a 12(b) defense, was procedurally improper, not properly asserted, and did not allow for an appropriate briefing); *Allied Metal Co. v. Edgerton Metal Products, Inc.,* 908 F.Supp. 576, 578 (N.D. Ill. 1995)(defendant waived defense of lack of personal jurisdiction by failing to raise it prior to answering complaint).

And, as noted elsewhere in these motions, if found liable, the Defendant Officers do not have to pay compensatory damages; by law, the City of Chicago must indemnify them.

Given the aforementioned reasons, Defendants should be precluded and or barred from making the arguments or presenting the evidence outlined in this motion.

**15. <u>Wearing Uniforms and Medals at Trial.</u>**

Defendant Officers may come to the courtroom wearing their uniforms and medals in the courtroom as Chicago police officers. For the same reasons mentioned in motion *in limine* No. 3 above, Defendant Officers should be precluded and/or barred from wearing their uniforms or medals in the courtroom. The introduction of this evidence at trial is inadmissible under Federal Rule of Evidence 404(a). *See* Fed. R. Evid. 404(a). Nor does such evidence fall under the character evidence exceptions. *See* Fed. R. Evid. 404(a)(1), 404(a)(2) and 404(a)(3).

Character evidence in the form of uniforms or medals of the Defendant Officers is wholly unrelated and irrelevant to Plaintiffs' claims. Such evidence does not bear upon the issue of excessive force used by Defendant Officers or the claim of failure to intervene. It is self-serving and designed to cast Defendants in a favorable light. Thus, it is a distraction from the spotlight of the true issue at bar in this matter: whether, objectively, the Defendant Officers used force that was unreasonable and whether they failed to intervene when excessive force was used. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Lastly, such evidence has no probative value regarding the disputed issues in this litigation and would be highly prejudicial to Plaintiffs. Hence, it must be excluded from trial. *See* Fed. R. Evid. 401, 403 and 404.

**16.**     <u>**Courtroom Demonstrations with Defense Counsel Acting as Performer**</u>

Plaintiffs request that defense counsel be barred from staging in-court demonstrations in which a defense attorney performs roles, particularly with one or more of the Defendants as his/her fellow player. Initially, Plaintiffs object that there is no way to lay the appropriate foundations for such a demonstration or for Defendants to give any assurance as to the accuracy of the demonstration. To point out the obvious – nearly every single aspect of such a demonstration will be materially and substantially different from what occurred on the scene at the time of the incident at issue in this case – the setting, the time of day, the location, the atmosphere, bystanders or witnesses, and on and on. Courts routinely exclude demonstrative exhibits such as maps, photographs, and animated representations of events on the grounds that the exhibit does not accurately depict what it purports to depict, that the perspective is distorted, and other similar flaws. for will assist the jury in weighing the evidence in this case. Plaintiffs' objections on the representational accuracy of in-courtroom demonstrations are based on Fed. R. Evid. 401 and 403.

Such in courtroom demonstrations are misleading since the jury will not know when defense counsel is acting as a witness in an in-court demonstration as distinct from serving as their clients' advocate  *See U.S. v. Johnston*, 690 F.2d 638 (7th Cir. 1982); Model Code of Professional Responsibility DR 5-102. Counsel should avoid appearing both as advocate and witness except under special circumstances. *See U.S. v. Morris,* 714 F.2d 669, 671 (7th Cir. 1983). In exercising its discretion to allow or forbid an attorney to appear as a witness, a court should examine the goals of the rule against such dual appearances and determine whether the particular situation requires that the testifying

attorney withdraw as counsel. The rationale for forbidding counsel to appear as a witness is that (1) It eliminates the possibility that the attorney will not be a fully objective witness. (2) In the case of a Government attorney, the rule eliminates the possibility that the prestige of the Government will artificially enhance the attorney's credibility as a witness. (3) It reduces the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments. (4) It reflects a broad concern that the administration of justice not only be fair, but also appear fair; and (5) It prevents a Government attorney, who is "expected to adhere to the highest standards of professional behavior and to be worthy of public trust and confidence" from running "the risk of impeachment or otherwise being found not credible" and thereby disgracing his office. *Id.* Plaintiffs submit that all these concerns are present when an attorney effectively testifies to certain events by participating in an in-court reenactment that adheres to Defendants' version of what happened.

Moreover, unlike physical demonstrative exhibits, in-courtroom demonstrations are generally presented with few or no questions being posed by defense counsel. Thus, plaintiff's counsel has little or no opportunity to object to actions and movements until after the movements and actions have occurred. Clearly, trials are about conflicting testimony and evidence regarding how the various events at issue transpired. Reenactments performed by defense counsel represent unfairly prejudicial means to mislead the jury towards one version of the facts in dispute. They are dramatically different from demonstrative exhibits, literally, and the differences amplify the prejudice that reenactments entail. Demonstrative exhibits are two-dimensional and generally focus on one or a few details involved in the events at issue – the appearance of the setting, the

route that someone took from one location to another. Reenactments, on the other hand, purport to illustrate complete events and/or actions, in three dimensions and living color. Lastly, such demonstrations are cumulative evidence that would already have been presented through the testimony of defense witnesses.

There is no principled reason why in-court demonstrations should be treated differently from demonstrative exhibits, if the Court allows them to proceed at all. Demonstrative exhibits must be shown to opposing counsel out of the presence of the jury, so that the opposing side has the opportunity to state objections and the proffering party to respond. The Court can then rule on whether the demonstrative exhibit may be shown to the jury. If such in-courtroom demonstrations are allowed by this Court during the trial, Plaintiffs request that precautionary measures be taken to eliminate the unfair prejudice to Plaintiffs engendered by in-court demonstrations by Defendants and their counsel. As with demonstrative exhibits, any proposed in-court reenactment should be presented to the Court and Plaintiffs' counsel outside of the presence of the jury before it is presented to the jury. This will allow Plaintiffs' counsel to object to the demonstration in a timely manner so that the Court has the opportunity to consider the demonstration's accuracy, how helpful or misleading to the jury it would be, and the balancing of unfair prejudice versus probative value. Plaintiffs further request that this Court admonish the jury prior to the defense demonstration that Plaintiffs deny that this is a true and accurate account of how the events transpired. Lastly, the parties have agreed on a proposed jury instruction regarding how the jury should consider demonstrative exhibits.[2] In light of the

---

[2] Agreed Proposed Jury Instruction No. 19, which has been submitted to the Court with the proposed Final Pretrial Order, tracks 7th Circuit Pattern Instruction 1.24 and reads: "Certain demonstrative exhibits have been shown to you. Those exhibits are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts."

dramatic and vivid nature of such three-dimensional reenactments, Plaintiffs request that this instruction be given to the jury at the time that any in-court demonstration will be presented. Such careful admonishments to the jury are necessary to balance any prejudice vs. probative value inherent in such reenactments.

**17.** **Defendant Officers' Military Service**

Plaintiffs move for an order *in limine* excluding all reference, evidence or testimony regarding all Defendant's prior employment history to his employment with the Chicago Police. Defendant's employment history including prior military service is irrelevant and unduly prejudicial to Plaintiffs. Defendant has failed to adequately explain how prior employment history including military service is relevant or why it is necessary to consider Defendant Officer's employment history prior to his employment with the Chicago Police Department. Plaintiffs do not question or charge that any Defendant Officers had prior bad acts or work indiscretions at other work facilities such as while employed in the military. Therefore, such prior employment as military service is outside the scope of this suit and irrelevant, and should barred. *See Richman v. Burgeson,* 2008 WL 2567132, *6 (N.D.Ill. 2008); *EEOC v. Studley Products Inc.,* 2006 WL 1084440, *1-2 (C.D. Ill. 2006).

In the alternative, if this Court allows the Defendant Officers to testify regarding their prior employment history including military service, such employment history should be limited. Comments such as protecting American's freedoms, testifying to a Defendant Officer's medals and accommodations, being a war hero, saving lives, or other comments designed to tug at the patriotic hearts of the jurors should be barred.

18. **Evidence or Argument Regarding Defendant Officers' Intent or Motive**

Defendants should be precluded and/or barred from making the argument or procuring testimony regarding the Defendant Officers motive or intent in their actions towards Plaintiffs. Neither motive nor intent are elements in Plaintiffs' excessive force or failure to intervene claims. In *Graham v. Connor,* the U.S. Supreme Court stated that motive and intent are not factors in determining whether excessive force was used: "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, **without regard to their underlying intent or motivation."** *See* 490 U.S. 386, 397 (1989)(emphasis added); *see also Saucier v. Katz,* 533 U.S. 194, 210 (2001)(overruled on other grounds).

Any mention of a potential motive or intent of the officers or lack thereof would confuse and prejudice the jury. The Defendant Officers' motive or intent in force used against Plaintiffs are not relevant to the allegations in this case. Evidence relating to a motive or intent or lack thereof would only be used to confuse the issues for the jury. Plaintiffs do not have the burden of showing a motive and/or intent and thus, Plaintiffs should not have the burden of rebutting testimony and/or argument as to what the Defendant Officers' motive or intent in beating the Plaintiffs might have been. For these reasons, the Defendants should be precluded and/or barred from offering any evidence, testimony or argument regarding the motives or intent (or the lack thereof) that Defendant Officers might have had in actions they took against the Plaintiffs.

19. **Plaintiff's Alleged Statements in the Ambulance**

According to Officer Szubski, Plaintiff Daniel Casares stated in the ambulance to

Officer Szubski "Next time I see your partner I slap her again", "I'll get you, I'll get my boys and we'll come to your house and rape your daughter and make you watch." Szubski Dep. Transcript, Exhibit A pg. 113 ln. 1-5. Officer Szubski also documented said statement in the police report. Plaintiffs deny that any such comment was uttered by Plaintiff Daniel Casares.[3] Despite this denial, Plaintiff requests that any evidence or argument be barred and/or precluded from evidence pursuant to Fed. R. Evid. 401, 403, 404, and 802.

Any accusation of Plaintiff Daniel Casares' alleged statement is irrelevant to the current proceedings under Fed. R. Evid. 402 and is thus inadmissible. Fed. R. Evid. 402. Excessive force is determined on what is objectively reasonable in light of the facts and circumstances confronting police officers at the time force is used. *Edwards v. Thomas*, 31 F. Supp. 2d at 1075, *see also Graham v. Connor*, 490 U.S. 386, 397 (1989). ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them"). Whether the Defendant Officers used excessive force in the arrest of either Plaintiff has no bearing on a statement that was said after the fact. The alleged statement made by Plaintiff Daniel Casares was made after the arrest and force was done upon him. Said statement was not in the facts and circumstances confronting the Defendant Officers when force was used in the arrest of the Plaintiffs. Therefore, the alleged inflammatory statement has no bearing on the real issue: Whether the Defendant Officers used excessive force against the Plaintiffs?

Furthermore, any accusation regarding the alleged inflammatory statement regarding raping one's daughter would be highly prejudicial and not probative. It would

---

[3] The denial of said comment is especially true considering Plaintiff Daniel Casares would be physically unable to rape anyone given that he is a partial qudro paraplegic.

conjure an image of a man who would rape a woman and such evidence has absolutely no probative value regarding this litigation and would be highly prejudicial to Plaintiffs. Hence, any allegations or evidence relating to Plaintiff Daniel Casares' alleged statement of "I'll get you, "I'll get my boys and we'll come to your house and rape your daughter and make you watch," should be barred and precluded from evidence. Fed. R. Evid. 401, 403, 404.

The alleged statement is also hearsay. As mentioned before said remark regarding raping one's daughter would be physically impossible, if not practically speaking impossible, for Plaintiff Daniel Casares to perform. There is no basis to assume that the alleged statement regarding raping Officer Szubski's daughter was given for the truth of the matter asserted. There is also no evidence that the alleged statement relative to the slapping of Officer Szubski's partner is given for the truth of the matter asserted. Although the statement was allegedly said by a party, it is not an admission or statement against his interest in this litigation, but would be nothing more than an angry remark. Furthermore, the ambulance drivers, Michael McGrath and Michael Day, who were present in the small ambulance when Plaintiff Daniel Casares yelled out this statement, did not remember the alleged statement. The non-remembrance of such an inflammatory statement by witnesses in very close quarters highlights the hearsay implications of said statement. For the above stated reason any alleged statement should be precluded from evidence.

### 20. <u>Preclude and/or Bar Use of Daniel Casares Video Deposition</u>

Plaintiff Daniel Casares' video deposition should be barred and/or precluded from

evidence.   Plaintiff Daniel Casares was deposed pursuant to a court reporter and videographer on July 7, 2009.  Plaintiff Daniel Casares' is available for trial; and thus, his video deposition can be used for impeachment purposes only.  See F.R.Evid. 30(a)(b); *Lewis v. United Air Lines Transport Corp.,* 27 F.Supp. 946, 948 (1939) ("A deposition thus might be admissible to impeach though not otherwise admissible").  Plaintiff Daniel Casares' written deposition testimony can easily be used for any impeachment purposes that the Defendants may want to use against Plaintiff Daniel Casares.

Plaintiffs' believe that Defendants will want to show the video deposition of Plaintiff Daniel Casares to demonstrate that he can move in a manner as to clench a fist. Plaintiff Daniel Casares picked up papers in the video deposition, Defendants argue that the picking up of papers demonstrates that he is able to clench a fist and hit Defendant Officer Bernal.  Plaintiffs assert that the movement of picking up papers is far different from clenching a fist.  Even if arguably the video deposition did demonstrate Plaintiff Daniel Casares clenching his fist the movement in the video deposition does not demonstrate that Plaintiff moved his arm in that manner on the date of the incident.  The jury is not equipped to interpret the movement present in the video.  The jury does not have the expert knowledge to discern if he could clench a fist at the deposition that he did clench his fist on the date in question.

It is anticipated that Defendants will argue that the experts will testify to Daniel Casares ability to move and the jury will be able to discern from the experts' testimony what Daniel Casares can do. Defendants' expert, Dr. Yarkony, identifies that he used the video in his determination that Plaintiff Daniel Casares can clench a fist. See Exhibit B. Although, Dr. Yarkony can testify as to what materials he examined in his determination

of Plaintiff Daniel Casares' ability to move, the materials that the Dr. Yarkony relied upon are not automatically admitted into evidence and available to the jury.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 589 (1993)  ("under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.)  For the reasons set forth above, the video deposition evidence is not reliable.

Additionally, arguing or presenting such evidence would confuse the issue for the jury as to whether his alleged clenching of a fist while picking up papers in the video deposition demonstrates that he hit Defendant Officer Bernal.  Plaintiffs are not in dispute that Plaintiff Daniel Casares can move his left arm and slightly contract his fist, the mere showing of the video deposition would be for the limited purpose of demonstrating that he can allegedly clench a fist completely.  The prejudicial impact of showing would far outweigh any minor probative value showing the video deposition would have, and thus Plaintiff Daniel Casares' video deposition should be barred under FRE 403.

For the above stated reasons, Plaintiff Daniel Casares video deposition should be precluded and/or barred from evidence.

### 21. <u>Preclude and/or Bar Evidence/Argument Relative to Plaintiff Daniel Casares' Suicidal Tendencies and/or History</u>

Plaintiff Daniel Casares has had mental health issues in the past.  Pursuant to Fed. R. Evid. 402, 403 and 404, Plaintiffs seek to exclude from trial any evidence, testimony or argument regarding the following:

1.  Any allegations that Plaintiff Daniel Casares has attempted to commit suicide;

2.  Any allegations that Plaintiff Daniel Casares has and/or had suicidal thoughts;

3. Any allegations that Plaintiff Daniel Casares has and/or had suicidal tendencies;

4. Any allegations that Plaintiff Daniel Casares suffered and/or suffers from depression.

5. Any allegations related to Plaintiff Daniel Casares post and/or current mental health history and/or conditions.

Plaintiffs offer the same arguments here as those set forth in Motion *in Limine* #3 and #5. In *Palmquist v. Selvik*, 111 F.3d 1332, 1334 (7th Cir. 1997), the plaintiff was shot and killed by the defendant police officer, when the plaintiff failed to comply with police requests and was swinging a muffler pipe and a fan blade, that struck one of the police officers present. Just days prior to plaintiff's death, the plaintiff expressed to his friends his desire to be killed by the police, or suicide by police. *Id* at 1338-1339. The Seventh Circuit, relying on *Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988), held that it was proper for the trial court to bar this evidence because these facts were not known to Defendant Officer Selvik and therefore had no bearing on the objective reasonableness of his actions. *Id* at 1339-1342. The Court also stated that such evidence would be highly prejudicial and shed no light on any material fact to the objective reasonableness test more or less probable. *Id*.

In another §1983 case, the police went to plaintiff's house in order to transport him to a mental health hospital and a physical struggle ensued. *See Wallace v. Mulholland*, 957 F.2d 333, 335 (7th Cir. 1992). The Court barred evidence of plaintiff's mental health history and conditions, because the police officers had no specific knowledge of plaintiff's condition, and the prejudicial effect of such behavior would outweigh its probative value. *Id* at 336. The *Wallace* Court held that only the actions of the plaintiff justify the use of force by the defendant officers and plaintiff's mental

history would have shifted the focus away from plaintiff's actions to his condition. *Id*. The Court also stated that "Evidence as to the general propensity of people suffering his ailments to make similar attacks would have been of more prejudicial than probative value to the defendants." *Id*.

Likewise in our case, the Defendants had no knowledge of Plaintiff Daniel Casares' mental health history at the time of their altercation. To allow any reference of Plaintiff's mental history and/or conditions into evidence would be highly prejudicial and would shed no light to the trier of fact as to whether the Defendants acted objectively reasonably in their use of force against the Plaintiff.

**22. Preclude and/or bar Evidence/Argument Regarding Allegations that Plaintiffs were Under the Influence of Drugs and/or Alcohol at the Time of Incident.**

Pursuant to Fed. R. Evid. 402, 403 and 404, Plaintiffs seek to exclude from trial any evidence, testimony or argument regarding the following:

1. Any allegations that Plaintiffs were or possibly were under the influence of marijuana at the time of their altercation with the Defendants;

2. Any allegations that Plaintiffs were or possibly were under the influence of alcohol at the time of their altercation with the Defendants;

3. Any allegations that Plaintiffs were or possibly were under the influence of any other drugs at the time of their altercation with the Defendants.

Plaintiffs offer the same arguments as those set forth in Motion *in Limine* #3, 5 and 22. In *Mason v. City of Chicago*, plaintiff testified during discovery that he took a few "puffs" of a marijuana cigarette three hours before his altercation with police officers. 631 F.Supp.2d 1052, 1055 (N.D. Ill. 2009)(Judge Denlow). However, the plaintiff claimed that he was not under the influence and there was no evidence to the contrary. *Id*. The Court ruled that the defendants failed to establish the evidentiary

foundation regarding plaintiff's marijuana use, because there was no evidence of marijuana in plaintiff's system or that the officers reasonably believed plaintiff was under the influence at the time of incident. *Id* 1057-1058. The Court reasoned that any evidence or mention of plaintiff's drug use would be highly prejudicial and would simply divert the jury in assessing plaintiff's claims. *Id* at 1060-1061. The Court went on to state "Marijuana plays no part in this inquiry and the introduction of such evidence serves no purpose other than to make a general character attack on Plaintiff." *Id* at 1061.

In our case, there is no evidence to even suggest that the Plaintiffs were under the influence of marijuana, alcohol or any other drugs during their encounter with the Defendants. The Defendants had no reasonable basis to belief that Plaintiffs were under the influence of drugs. To allow such evidence, would be solely for the purpose to paint the Plaintiffs in a bad light. Furthermore, such evidence would not help the jury in determining whether the Defendants acted reasonably and properly during their encounter with the Plaintiffs. Therefore, any evidence suggesting Plaintiffs were under the influence should be excluded under Rules 401, 402, 403 and 404.

### 23. **Allegations of Plaintiff's Prior Injuries Other Than Plaintiff Casares's Being A Quadriplegic.**

Pursuant to Fed. R. 402 and 403, Plaintiffs seek to exclude from trial any evidence, testimony or argument regarding Plaintiffs' prior injuries other than Plaintiff Casares's being quadriplegic. Other prior injuries are not relevant and offer no probative value as to the conduct of the Plaintiffs or the Defendants.

### 24. **Finding and/or Guilty Verdict of Battery Against Plaintiff Casares.**

Excessive force claims are analyzed under the fourth amendment and its reasonableness standard. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104

L.Ed.2d 443 (1989) (*Graham* ), *Green v. Fox Valley Park Dist, et al,* 2004 WL 1699046 (N.D.Ill 2004) (Darrah, J). Under the fourth amendment, the question is whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting the officer, without regard to the officer's intent or motivation. *Graham,* 490 U.S. at 397, *Green, Id *2.* Reasonableness is judged from the perspective of a reasonable officer on the scene, rather than with the "20/20 vision of hindsight." *Graham,* 490 U.S. at 396, *Green, Id *2*. Factors considered in determining the reasonableness of the force exerted include: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others present, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *See Graham,* 490 U.S. at 396, *Green, Id*.

Putting this matter into its proper context, the battery conviction is not probative of the use of force and may only serve to distract the jury from analyzing whether the officers used too much force under the circumstances, hence be overly prejudicial.  FRE 403

Further, the introduction of the battery conviction, while offering no probative value to Plaintiff's claims, would be highly prejudicial to Plaintiff.  Telling a jury that Plaintiff was convicted of a battery would be highly prejudicial by painting Plaintiff as having a propensity towards violence. *Strong v. Clark*, 1990 WL 70421 (N.D.Ill 1990) (Judge Conlon) (prior criminal behavior is inadmissible to prove a party's bad character).

Lastly, if the door is opened to the battery conviction, the jury should also be told that Daniel Casares was found not guilty of the two obstruction and resisting arrest charges.  This would balance the playing field in this connection.

Finally, the actual battery conviction was not well explained by the trial court in the criminal case. In other words, at no time did the criminal trial court articulate the type of battery and it consequences, that Officer Bernal (the purported battery victim) sustained.

### 25. Evidence/Argument Related to Resisting Arrest Charges Brought Against Plaintiffs

Pursuant to Fed. R. Evid. 402 and 403, Plaintiffs see to exclude from trial any evidence, testimony or argument regarding the following:

1. The Plaintiffs were found guilty of resisting arrest;

2. The Plaintiffs were criminally charged with resisting arrest;

3. The Plaintiffs resisting arrest charges were dismissed due to technicalities;

4. Or any mention of criminally resisting arrest.

The criminal court dismissed and vacated all criminal resisting arrest charges brought by the Defendants against the Plaintiffs. Any mention of Plaintiffs being charged with or criminally tried for resisting arrest would only serve to diminish the Plaintiffs in the eyes of the jury. Not only would such evidence be highly prejudicial, it would also serve no purpose into the relevant inquiries to be decided by the jury: whether the Defendants used excessive force in arresting and dealing with the Plaintiffs. Therefore, Plaintiff prays that this Court grant Plaintiff's Motion *in Limine* and preclude any mention of the criminal resisting arrest charges lodged against the Plaintiffs.

### 26. Testimony and Expert Report by Dr. Gary M. Yarkony

In the three-page report produced by Defendants, presumably fulfilling the requirements of Fed. R. Civ. P. 26(a)(2)(B), their expert witness, Dr. Gary M. Yarkony,

opined that "based on his medical records and function, Daniel Casares was able to strike the police officers." (*See* Defendants' Exhibit No. 26, p. 3,) Plaintiffs respectfully request that Dr. Yarkony be barred or precluded from offering his opinions regarding Daniel's physical abilities at trial and that the Court not allow Dr. Yarkony's expert report to be admitted into evidence. The grounds are Defendants' failure to provide Plaintiffs with required information on their purported expert as well as the irrelevance of Dr. Yarkony's to any disputed issue in this case.

Defendants have failed to comply with Fed. R. Civ. P. 26(a)(2)(B) and have not provided Plaintiffs with the information required by the rule and needed by Plaintiffs to properly examine Dr. Yarkony at trial. The report from Dr. Yarkony that Defendants have proffered is incomplete and inadequate. Specifically, Defendants failed to comply with the mandatory requirements regarding expert reports and left out of Dr. Yarkony's report: (1) "a list of all other cases in which, during the previous 4 years, [Dr. Yarkony] testified as an expert at trial or by deposition and (2) "a statement of the compensation to be paid for the study and testimony in the case." Rule 26(a)(2)(B)(v) and (vi). These crucial omissions prevent the jury from fully evaluating Dr. Yarkony's qualifications to offer the opinions that he intends to offer, the reliability and consistency of his opinions, and, most particularly, any bias he might have in favor of Defendants.

Failure to comply with Rule 26(a)(2)(B) results in exclusion that is "automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *See Salgado by Salgado v. GMC*, 150 F.3d 735, 742 (7th Cir.1998). Moreover, this sanction applies specifically when a party fails to disclose the qualifications, past cases, and compensation of the proposed expert. *See Benedetti v. Soo*

*Line R. Co.*, 2004 WL 2222281, *4 (N.D.Ill. Sept. 29, 2004)(striking report that failed to include résumé, fee schedule, and list of cases); *Expeditors International of Washington, Inc. v. Vastera, Inc.*, 2004 WL 406999, *2 (N.D.Ill. Feb. 26, 2004) (discussing significance of qualifications and prior experiences as an expert witness). *See also Ortiz-Lopez v. Sociedad Espanola de Auxilio Muto y Benefiencia de P.R.*, 248 F.3d 29, 34-35 (1st Cir.2001)(holding that an expert's credibility and qualifications, including prior testimonial experience in cases involving similar claims, was "directly at issue" and affirming the preclusion of expert's testimony for failing to make a timely disclosure of the cases in which the expert previously had testified).

Defendants' failure to disclose information regarding past testimony as an expert and what Defendants paid him for opining in  this case cannot be construed as harmless. Plaintiffs have been prevented from reviewing and analyzing Dr. Yarkony's prior expert opinions and thus will be unable to adequately examine him regarding, for example, the bases of these opinions, the similarities and differences between those opinions and his opinions in this case, or possible inconsistencies in his expressed opinions. As a result, Plaintiffs are severely disadvantaged in challenging Dr. Yarkony's knowledge and credibility at trial  and thereby casting doubt on his opinions. In addition, without information regarding his prior testimony and regarding his compensation in the instant action, Plaintiffs will be prevented from exploring and exposing biases that might color the reliability of  his testimony and his opinions. The profound prejudice to Plaintiffs' case of these barriers to presentation of their case should be obvious.

Moreover should the Court grant Plaintiffs' motion *in limine* No. 26 and bar evidence relating to the criminal charge of battery on which Plaintiff Daniel Casares was

tried and convicted, Dr. Yarkony's opinion would be irrelevant to the claims and defenses in this case. As noted above, Dr. Yarkony opined exclusively regarding Plaintiffs ability "to strike the police officers." As Plaintiffs argued in their motion *in limine* No. 26, Daniel Casares was accused and convicted of battering Defendant Officer Bernal inside the car; Plaintiffs allegations regard the use of excessive force against them *after* Daniel Casares exited the vehicle. Accordingly, if the Court grants Plaintiffs' motion and precludes evidence regarding the battery charge against Daniel Casares, Dr. Yarkony's opinion regarding Daniel Casares's ability to strike the officers will not be relevant to any issue in this case and thus should be barred.

### 27. <u>Evidence Regarding Witnesses' Criminal Histories</u>

Although Plaintiffs requested criminal histories of all witnesses disclosed in the parties' Rule 26(a) disclosures, the Defendants failed to tender any such histories; Defendants only produced criminal histories for the Plaintiffs. Thus, pursuant to Fed. R. Civ. P. 37, Plaintiffs request that Defendants be barred or precluded from offering evidence or eliciting testimony regarding the criminal histories of any witnesses called to testify at trial.

**WHEREFORE,** for the reasons stated above, Plaintiffs respectfully request that this Court grant his Motions *in Limine.*

Respectfully submitted,

**/s/ Leah Selinger**
One of Plaintiff's Attorneys

J. Nicolas Albukerk
**Albukerk & Associates**
A Litigation and Consumer Rights Law Firm
111 E. Wacker St. Suite 555
Chicago IL 60601
Phone: 773 847 2600
Fax: 773 847 0330

**The Blake Horwitz Law Firm, Ltd.**
20 S. Clark, St., Ste. 500
Chicago, Illinois 60603
Telephone: (312) 676-2100
Fax: (312) 372-7076