# Exhibit B

# Susan Zuckerman, M.D.
# Gary M. Yarkony, M.D.

*Physical Medicine and Rehabilitation*
*Board Certified*

November 1, 2010

Mr. Sanjay H. Patel
Assistant Corporation Counsel
Federal Civil Rights Litigation
30 N. LaSalle, Suite 900
Chicago, IL. 60602

Re: Casares v. City of Chicago, 08C4198

Dear Mr. Patel:

I have reviewed the following records and videos (DVD) in regards to Daniel Casares.

- Civil complaint filed by quadriplegic plaintiff, Daniel Casares;
- DVDs of video taped deposition of Daniel Casares;
- Deposition transcript of Chicago Police Officer Charles Leach;
- Medical records from St. James, RIC, Lincoln Park, Trinity;
- Police reports;
- Written report/opinion of Dr. Richard Lazar;
- Deposition transcript of Dr. Lazar.

I was director of the spinal cord injury program at the Rehabilitation Institute of Chicago for 10 years. I have seen thousands of patients with spinal cord injuries. My curriculum vitae documents my activities, research and teaching in the field of spinal cord injury. I have published over 50 papers in peer reviewed medical journals and written numerous book chapters and review articles. I have presented numerous papers and lectured throughout the United States and many foreign countries. My book on spinal cord injuries won an award from the American Medical Writers Association.

Daniel Casares sustained a spinal cord injury and was admitted to St. James Hospital on August 15, 2002. Discharge summary from St. James Hospital indicates he was able to feed himself.

Records of Lincoln Park Hospital are reviewed. Occupational therapy evaluation indicates that on admission, he was able to feed himself, requiring assistance for containers. He required supervision for bathing and upper body dressing on January 23, 2007.

**Yarkony Rehabilitation Associates, Ltd.**
*87 N. Airlite St., Suite G-16*
*Elgin, IL 60123*
*Phone (847) 468-1511    Fax: (847) 468-1555*

Records of the Rehabilitation Institute of Chicago are reviewed. Dr. Michael Berkowitz examined Mr. Daniel Casares on April 14, 2004. Motor test of his elbow flexor revealed normal strength (5/5). His wrist extensors were normal (5/5). His triceps and the elbow extensors were slightly below normal (4- to 5/5) which means they could give resistance. When he extended his wrist, his thumb would come towards his fingers and his fingers flex allowing him to grasp objects by this action. He had some minor grip strength.

Dr. Berkowitz's note indicates that he is able to perform intermittent catheterization. This requires sufficient skill and coordination to place a catheter into his penis to his bladder, drain the urine and remove the catheter. This requires significant skill, balance and coordination. Note of July 23, 2003 indicates he is independent with feeding and grooming after setup although he occasionally requires assistance for grooming. He requires assistance for upper body dressing.

Occupational therapy discharge summary of May 3, 2004 indicates at discharge that he was able to eat with food setup. He required minimal assistance with grooming, bathing and upper extremity dressing. He was able to self serve food with assistive devices.

I have reviewed the arrest report. Ms. Casares has sufficient strength to flex his elbow, extend his wrist causing his fingers to flex and strike a police officer. The presence of a tricep muscle will assist with active extension and control. As he is able to feed himself, this shows he has sufficient awareness of his body and control of his upper extremities to perform even more fine movements of his upper extremities. Therefore, a punch is actually an easier task to perform as it requires even less dexterity. His ability to lift and turn pages is seen on his video deposition.

I have reviewed the report of Dr. Richard Lazar. Dr. Lazar misstates Mr. Casares's strength as indicated by Dr. Berkowitz. As Mr. Casares's strength is documented in the medical records, it is inappropriate to estimate his strength based on the ASIA definitions. He has tenodesis in his hands and wrist extension. Dr. Lazar misstates his abilities. He is correct that he has no motion in his legs but as he was seated in a car, it would be no problem for him to use this strength to strike an officer. As he can feed himself and groom (or assist) with grooming, Dr. Lazar's statement that he can not determine the position of his joints in space has no medical basis. Active triceps (4-/5) would allow Mr. Casares to perform a karate chop type motion. On page 6 of his letter, Dr. Lazar misstates the location of the C7 dermatome. It also states that he is no match for the police officers. This would not prevent him from attempts to strike these officers due to his preserved upper body strength. I have reviewed Dr. Lazar's deposition.

In regards to Mr. Casares's spasticity, it is not a factor in the incident whatsoever. Spasticity occurs in Mr. Casares's paralyzed muscles. His biceps, wrist extensors and triceps are under his voluntary control. He could not punch anyone due to a spasm. This is not medically possible. Spasticity, although exacerbated by noxious stimuli in his case as documented by the records, is in his legs and would not cause him to punch someone. Observation of Mr. Casares sitting in his deposition shows his ability to turn pages. Spasticity is not a psychological problem or influenced by anxiety or fear in quadriplegics. Anxiety and fear cannot cause him to punch a police officer involuntarily as these muscles are under his own voluntary control. There is no medical basis to make such a statement. It is preposterous to make such a statement. No spasm

similar to a punching motion is noticed in his deposition. His deposition shows that he can use his arms to turn pages and position papers. This could not occur without sufficient voluntary control and contradicts Dr. Lazar's statements about his severe spasticity, arm strength and spasticity from stress, fear and psychological causes is not backed up by his medical records and observed physical abilities.

Dr. Lazar should use the medical records to determine his strength, not the ASIA standards. Strength is used to determine the ASIA level. The ASIA level does not determine the person's strength. Dr. Berkowitz's records show that he has greater strength than the strength concocted by Dr. Lazar's application of the ASIA standard. Dr. Berkowitz's manual muscle test if the most appropriate way to determine his strength. If Dr. Lazar had used Dr. Berkowitz's muscle testing, there would be no reason for him to imagine a different level of strength than documented in the records.

In summary, based on his medical records and function, Daniel Casares was able to strike the police officers. His medical records and functional abilities prove this to be the case. There is no basis for Dr. Lazar's opinions. His records clearly document normal strength in his biceps, wrist extensors and near normal triceps strength. It is his actual strength that is critical in this case, not his ASIA level. He has the ability to punch with his biceps and make a fist with wrist extension and tenodesis.

I hold these opinions in this report to a reasonable degree of medical certainty.

Sincerely,

Gary M. Yarkony, M.D.

GMY/vp