**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DANIEL CASARES and KARINA CASARES, | No. 08 C 4198 |
| Plaintiffs, | MAGISTRATE JUDGE KIM |
| v. | |
| OFFICER BERNAL, *et al* | |
| Defendants. | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE*

NOW COME the Plaintiffs, by and through their attorneys, Dan Dorfman, Esq., and Mustafa Kamal, Esq., of the Blake Horwitz Law Firm, Ltd., pursuant to the Federal Rules of Evidence and the Federal Rules of Civil Procedure and in response to Defendants' motions *in limine*, state as follows:

### Statement of Facts

On October 9, 2006, Plaintiff Daniel Casares was sitting in the passenger seat of a car in an alley. Chicago Police Officers approached the car with their guns drawn and asked all of the passengers to exit the vehicle. The police took the driver and other passenger from the scene. The officers repeatedly screamed at Daniel to exit the vehicle. The passengers of the vehicle, as well as neighbors Marco Paredes and Maria Pena, repeatedly told officers that Daniel could not move he was crippled and a quadriplegic. As more officers arrived, the scene grew increasingly tense as officers had their guns drawn and repeated their command that Daniel exit the car. Karina and Daniel lived approximately a block and a half from the alley in question. After all of the officers

arrived, Daniel's sister Karina arrived on the scene and complained that there was no reason for the officers to have their guns out. Karina also explained to the officers that Daniel was a quadriplegic and could not get out of the car. Officer Bernal got into the driver's seat of the car. While the driver's side car door was open, and the passenger side window was down, Officer Bernal attempted to get Daniel out of the car. Officer Bernal put her gun to Daniel's leg and said, "I bet you'll move now motherfucker." Daniel then immediately, in a quick jerking action, raised his arms and made contact with Officer Bernal's face. Officers Leach and Williams who were standing immediately outside of the open passenger window where Daniel was sitting reached into the car and hit Daniel with an open hand strike to the face. Leach and Williams immediately opened the car door and whipped Daniel to the ground.

Karina Casares was at this time standing several feet away from Daniel on the passenger side of the car, screamed "No!" and rushed toward Daniel. Officers Verdin and Szubski threw Karina to the ground. Both Daniel and Karina were repeatedly kicked and punched both before and after handcuffs were placed on them. Officers stopped kicking Karina after she screamed that she was pregnant. Karina suffered a bloody nose and multiple bruises to the body.

Daniel was beaten while his head lay on the ground and his feet remained in the automobile. Daniel suffered contusions to the head and was bleeding profusely from several parts of his skull. Daniel lost consciousness and was taken from the scene in an ambulance. Just after the beating and while waiting for an ambulance, a neighbor, Marco Paredes, used his cell phone to take several pictures of Daniel's bleeding head with an officer's foot resting on Daniel's head or neck area.

## Legal Standard

"Evidence should be excluded on a motion in limine 'only when evidence is clearly inadmissible on all potential grounds .... [and][u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial . . .' The denial of a motion in limine does not mean that the evidence is necessarily admissible, rather, it means only that the party moving in limine has not demonstrated that there is no possible basis for the admission of the evidence. Further, the denial of a motion in limine does not preclude a party from objecting to the admission of any evidence at trial. *More v. City of Braidwood*, 2010 WL 3547964, *1 (N.D.Ill. Sept. 10, 2010)(Manning, J.) *see also United States v. Connelly*, 874 F.2d 412, 416 (7th Cir.1989)(explaining that "a ruling [on a motion *in limine* is] subject to change based upon the court's exposure to the evidence at trial").

## Introductory Argument

Defendants ground several of their Motions *in Limine* on a common tenet, with which Plaintiffs in principle agree *if* applied equitably. This is how Defendants put the principle in opposing an argument they speculate Plaintiffs will make:

> The jury must decide this case on the merits and not base its decision on whether the Plaintiffs have had to wait [a long time] to get their case to trial. . . . Defendants are entitled to present their defense based on the facts of the case unencumbered by such prejudicial comments and improper attempts to garner sympathy from the jury [such as "Daniel has had to overcome multiple obstacles to get his case to trial"]. (Defendants' Motion *in Limine* No. 13 [Dkt. No. 197] ¶¶ 4, 7.)

In opposing references to "an alleged police 'code of silence,'" Defendants cite the principle as expressed by a federal district court in Indiana: "'In a court of law . . . justice is dispensed based on evidence of articulated and proven facts, not on generalized assumptions and prejudices.'" Defendants' Motion in Limine No. 5 [Dkt. No. 189] ¶ 5,

*quoting Sanders v. City of Indianapolis*, 837 F.Supp. 959, 963 (S.D.Ind. 1992). "The only purpose to introduce this type of testimony [regarding 'code of silence']," Defendants argue, "is to invoke images in the jurors' minds that officers run amok to protect their own." *Id.*, ¶ 6. Such arguments, Defendants contend, are highly prejudicial to their defense.

Plaintiffs recognize the soundness of this basic principle. Indeed, it underlies a number of Plaintiffs' Motions in Limine. But Plaintiffs respectfully submit that the principle must be applied equitably and fairly to both parties or not at all. It is a basic principle inherent in the federal civil justice system in the United States and not just to police officer defendants. To put the principle another way by way of paraphrase: "[Plaintiffs] are entitled to present their [case] based on the facts of the case unencumbered by such prejudicial comments and improper attempts to garner sympathy from the jury [as 'police officers risk their lives every day']." *See* Plaintiffs' Motions *in Limine* No. 10. "In a court of law . . . justice is dispensed based on evidence of articulated and proven facts," not on generalizations such as "plaintiffs [who sue police officers for misconduct] are in it for the money" [*Id.*, No. 11] or prejudices invoked by referring to Plaintiffs' neighborhood on the South Side of Chicago as a "high crime" area. [*Id.*, No. 12.] "The only purpose to introduce . . . testimony [that Plaintiffs photographed Daniel Casares's injuries in the hopes of financial gain through this lawsuit] "is to invoke images in the jurors' minds" of greedy plaintiffs who "run amok" filing frivolous lawsuits.

As Plaintiffs' argue in greater detail in their motions *in limine*, such generalizations and stereotypes, unsubstantiated by any evidence the jury will see and hear, encourages the jury to decide this case on emotional grounds and not on the facts as

presented in court as juries are supposed to do. Moreover, as Defendants **[CITATION]** This principle forms the ground for Plaintiffs' responses to a number of Defendants' motions *in limine*.

1.      **Exclude Witnesses from the Courtroom.**

     Plaintiffs agree.

2.      **Indemnification and Payment of Defense Counsel by the City of Chicago**

    A.      **Indemnification**

     Plaintiff agrees, provided that Defendants do not open the door by introducing evidence of the Defendant Officers' personal finance and making the argument that the Individual Defendants would have to personally pay for any punitive damages awarded. As Judge Shadur has reasoned: If the jury learns "that the individual officers will have to bear [punitive] damages out of their own pockets, fairness would require that the jury also be informed of the true situation (indemnification) as to compensatory damages," *See Galvan v. Norberg*, 2006 WL 1343680, *2 (N.D.Ill. May 10, 2006). As Plaintiffs argue in their Motions *in Limine* No. 9 and in their Introductory Argument, *supra*, if Defendants open the personal finances/punitive damages, Plaintiffs should be allowed to inform the jury that the Defendant Officers *do not* have to pay compensatory damages.

    B.      **Payment for Defense Counsel**

     Plaintiffs agree, provided that Defendants do not open the door regarding the relative costs of litigation by making the "Anyone-Can –File-A-Lawsuit" argument. *See* Plaintiffs' Motions *in Limine* No.14 and Introductory Argument, *supra*. The flip side of the argument that civil rights plaintiffs somehow get a "free pass" to the courtroom is that Chicago Police Officers get a "cost-free" defense. They are comparably prejudicial

arguments and both should be barred. *See* Plaintiffs' Motions *in Limine* No. 14 and Introductory Argument, *supra*.

### 3.      Publicity against Defendants

Plaintiffs have no intention of publicizing this case before or during trial. However, Plaintiffs object that the relief Defendants seek is overly broad, vague and indefinite. The motion leaves both the Court and Plaintiffs to guess what remarks or information would be "adverse" or "highly adverse." Plaintiff notes that these terms are *not* employed in Local Rule 83.53.6, which Defendants rely upon. The rule refers to "extrajudicial statement[s] . . . [that] would pose a serious and imminent threat to the fairness of [a trial]." *See* L.R. 83.53.6. Moreover, the relief requested appears to be of indefinite duration, unlike the LR 83.53.6, which limits its restrictions on speech to "before or during trial." Lastly, Plaintiffs object to the one-sided nature of the motion. Any restrictions that the Court places on "extrajudicial statements" should govern the conduct of counsel for both parties, as does LR 83.53.6.

### 4.      Alleged Misconduct by Police Officers

Plaintiff agrees, provided that Defendants do not open the door by tarring Plaintiffs with the prejudicial brush of "high crime" neighborhood. *See* Plaintiffs Motions *in Limine* No. 12 and Introductory Argument, *supra*. Precisely the same arguments that Defendants make here apply to the relief that Plaintiffs seek in that motion *in limine*. To paraphrase the Defendants: "Other, unrelated allegations of [vague, unspecified 'crimes' by unknown persons at unknown times with unknown disposition of the charges] have no bearing on the questions of fact raised by [the defenses that Defendants assert]" and are therefore not relevant under Fed. R. Evid. 401. "Rather, such evidence would be highly

prejudicial since its only purpose would be to inflame the jury against [Section 1983 plaintiffs] in general and against the individual [Plaintiffs and their witnesses] in this particular case."

5.    **"Code of Silence"**

Plaintiffs will refrain from using the phrase "code of silence." However, Plaintiffs object that, with that exception, this motion *in limine* is overly broad, vague and unclear. As with No. 3, *supra*, Plaintiffs and the Court are left at sea as to just what this motion seeks to ban. Plaintiffs submit that there is no readily discernible limit to a bar on "*any sort* of argument" or any effective guidance in a ban of "insinuate [ions]

Plaintiffs agree that a phrase like "code of silence," which arguably embraces the entire CPD in general, does not address the conduct of the individual Defendant Officers in this case. But Defendants' objection to "questions regarding [these particular] officers' experiences in reporting 'police misconduct' and whether the officers would report any such misconduct" is misplaced. Such questions are not based on vague, generalized concepts imported from outside the courtroom, but focused and specific to these Defendants, Faced with a comparable motion *in limine*, Judge Denlow of this District barred use of the phrase "code of silence," but reasoned that a broader ban ran the risk of precluding examination aimed at exposing possible biases of defendants and their witnesses:

> The motion is granted in that the phrase "code of silence" is unduly
> prejudicial and may not be used at trial. However, bias is nearly always
> relevant. A party's and a witness's common group membership is probative
> of bias, even without proof that the party or the witness embrace the
> organization's tenets. Accordingly, Defendants' motion is denied with
> respect to Plaintiffs' ability to argue the bias and prejudice of one police
> officer on behalf of a colleague in the same way any party may argue the
> bias of any witness in relationship to a plaintiff or defendant.

*Townsend v. Benya*, 287 F.Supp.2d 868 (N.D. Ill 2003), *citing United States v. Abel*, 469 U.S. 45, 52 (1984).

Accordingly, Plaintiffs agree to avoid use of the term "Code of Silence" but prays that this Court allow Plaintiffs to attack the Defendant Officers' biases based upon group membership and their own attitudes and histories regarding the reporting of misconduct by their fellow officers.

**6.** **Police Department Policies and General Orders**

Defendants move to bar any references to CPD general orders, rule and regulations on the ground that violating such official police procedures does not establish a constitutional tort under Section 1983. Defendants take far too narrow perspective on the relevance of police procedures and their motion should be denied.

Officers in a police misconduct cases may relate their knowledge of procedures that include police department general orders, rules and regulations to provide background and context for a jury's assessment of the defendant officers' conduct. As the United States Supreme Court has explained, in a Section 1983 police misconduct case, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). When assessing a situation and determining his or her actions, an officer "exercise[s] common sense and draw[s] upon his training and experience in evaluating the totality of the circumstances confronting them . . ." *See Holmes v. Village of Hoffman Estates,* 511 F.3d 673, 679 (7th Cir, 2007). Accordingly, a jury may consider the training, procedures and rules that form a context for police conduct when considering the reasonableness of the actions of defendant police officers in Section 1983 cases. *See*, *e.g.*,

*Paine ex rel. Eilman v. Johnson*, 2010 WL 785398, *4 (N.D.Ill. Feb. 26, 2010)(Kendall, J.)(noting that "testimony that an officer's tactics 'violated standard police practices . . . may ... be deemed relevant to the reasonableness inquiry'"), *quoting Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir.2005);

Thus, when defense counsel in *Edwards v. Thomas* sought to bar in a motion *in limine* all reference to any general orders or regulations of the police officers, as Defendants do here, the court held that although the general orders did not necessarily equate to violations of the plaintiff's constitutional rights, such violations of police rules can be relevant to and probative of the plaintiff's constitutional claims. *See Edwards*, 31 F. Supp. 2d at 1075. As the court explained, an analysis of "police regulations, general orders and officer training provide a relevant (although not conclusive) benchmark for evaluating" the objective reasonable standard set forth in *Graham v. Connor*. *Id.* at 1075-1076.[1]

What Defendant Officers knew at the time of his encounter with Plaintiff, *i.e.* state of mind, is relevant to the facts and circumstances confronting him and how he responded. The Defendant knew of the general orders, rules and regulations of the City of Chicago at the time he interacted with Plaintiff. Officer Kelly's knowledge of the City's General Orders is a part of his training as Chicago Police Officers and is a part of facts and circumstances that he was aware of at the time of his interaction with Plaintiff.

While *Thompson v. City of Chicago,* cited by Defendants, holds that violations of general orders do not give rise to a §1983 claim in and of themselves, *Thompson* and the other decisions Defendants rely upon do not negate the basic principle that excessive

force is determined on what is objectively reasonable in light of the facts and circumstances confronting police officers at the time. *See Edwards*, 31 F. Supp. 2d at 1075. Barring evidence of these general orders, rules and regulations for the purposes of determining what the Defendant Officers knew at the time of their interaction and assessing the reasonableness of his actions would prejudice Plaintiff and impair his ability to present information about what the Defendant Officers knew at the time of their interaction with the Plaintiff.

Additionally, the Seventh Circuit's pattern jury instructions embody this understanding of the law: "You have heard evidence about whether the Defendant Officers' conduct complied with rules, regulations, and/or orders of the Chicago Police Department. You may consider this evidence in determining whether the actions of the Defendant Officers were objectively reasonable." *See* 7th Circuit Pattern Federal Civil Jury Instructions 7.04. If evidence regarding CPD rules, regulations and/or orders is offered at trial, Plaintiff would agree that the Court should offer this instruction.

Lastly, general orders, rules and regulations may be introduced as evidence of defendant's state of mind in connection with a willful violation of these orders to establish the intent element of Plaintiff's claim for punitive damages. *See Paine v. Johnson et al.,* 2010 WL 785400 at *2 ( N.D. Ill. 2010); *Rodriguez v. Cervantes*, 2009 WL 3460100, *1 (N.D.Ill. Oct. 29, 2009)(Shadur, J.)

For all these reasons, Plaintiff respectfully requests the Court to deny Defendants' Motion *in Limine* No. 3.

**7.      The Jury Should Punish the City**

Plaintiffs will not argue that the jury should "punish the City or its police department or the 'police' in general." Defendants' Motion *in Limine* No. 7, ¶ 2. However, Plaintiffs object to the extent that the motion seeks to bar the legitimate argument that certain abusive behavior by Chicago Police Officers should not be tolerated. Such argument is not overly prejudicial and Defendants have ample opportunities to properly defend themselves.

**8.      Alleged Battery by Non-Defendant Officer**

Plaintiffs agree.

**9.      Improper Training or Supervision**

Defendants move to bar any evidence or argument that the Defendant Officers were improperly trained or supervised.  The Defendants are not clear on how this evidence would unfold at trial and/or what purpose it may or may not serve.  The Defendants' motion is overly broad and vague.  This motion is too premature, because during the trial the Court would be in a better position to determine what testimony is elicited and for what purposes.  At that time the Defendants can make any objections that they see fit, and the Court can then make a ruling on what the testimony actually is, not what the Defendants think it might be.  Therefore, this Motion should be denied.

**10.      Civilian Complaints and Disciplinary Histories**

By this motion, Defendants seek to bar from trial CRs filed and/or sustained, disciplinary history and/or arrests against the Defendant Officers.  The motion should be denied.

- 11 -

Internal investigations such as CRs are admissible and relevant in police misconduct cases under Fed. R. Evid. 404(b) to establish such issues as intent, plan, and absence of mistake. *See Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993) (where plaintiff claimed he was tortured into confessing, evidence that defendant officers had tortured other suspects was admissible under F.R.Evid. 404(b) to show intent, plan, *modus operandi* and absence of mistake); *Petrovic v. City of Chicago*, 2008 WL 818309, *2 (N.D.Ill. Mar. 21, 2008)(testimony at trial by subject of prior excessive force complaint against defendant officer admissible to establish intent, plan, and absence of mistake by defendant officer when he allegedly injured the plaintiff); *Edwards v. Thomas*, 31 F.Supp.2d 1069, 1074 (N.D.Ill. 1999)(evidence of subsequent sustained excessive force complaint against defendant officer admissible to show intent to use excessive force against plaintiff). CRs, particularly sustained CRs, are admissible under the "other purposes" standard of Fed. R. Evid. 404(b).

Such evidence may also be relevant to punitive damages, in which intent is an element of the claim. *See Akbar v. City of Chicago*, 2009 WL 3335364, *1 (N.D.Ill. Oct. 14, 2009)(intent as element of punitive damages claim); *Finley v. Lindsay*, 1999 WL 608706, *3 (N.D.Ill. Aug. 5, 1999)(internal investigations are admissible because they "provide[] evidence that bears upon [Defendant] Officers' intent to commit assault and battery on [Plaintiff]"). Plaintiff in this case alleges a claim for punitive damages.

Moreover, trustworthiness of witnesses is always at issue in civil litigation. The issue is particularly keen in police misconduct cases, where the versions of events proffered by defendant officers and alleged by plaintiffs invariably differ. The issue of trustworthiness also arises when an officer has made misrepresentations in prior internal

investigations. Accordingly, CRs relating to the Defendant Officers are admissible for purposes of attacking his credibility under Fed. R. Evid. 608(b). *See*, *e.g.*, *Paradiso v. Obaldo*, 2009 WL 3272217, *1 (N.D.Ill. Oct. 8, 2009)(statements to OPS in prior investigations admissible for impeachment purposes); *Saunders v. City of Chicago*, 320 F.Supp.2d 735, 739 (N.D.Ill. 2004)(evidence regarding prior OPS investigation of defendant officers admissible for impeachment and rebuttal purposes);

The Defendant Officers CRs, disciplinary history and arrests are admissible in this case on all these grounds. Accordingly, Defendants' motion should be denied.

## 11.     **Defendant Officer Leach's Conviction for Battery**

The Plaintiffs do not object to Defendants' motion.  However, Plaintiff reserves the right to inquire into Defendant Leech's battery conviction if the Defendants open the door to Defendant Leech's conviction.

## 12.     **Lay Opinions regarding Daniel Casares's Medical Condition or Capabilities**

Through this motion, the Defendants seek to bar Karina Casares, Marco Paredes or any of Plaintiffs' witnesses from testifying regarding Daniel Casares' physical condition, abilities or capabilities.

The testimony that the Defendants seek to bar was solicited by their own counsels' questioning of Plaintiff Karina Casares and Marco Paredes. The Defendants want to preclude testimony that has not been offered yet and that they can only speculate will be offered, relying on testimony given in depositions, where the Federal Rules of Evidence generally do not apply. Defendants' motion is premature, overly broad and speculative. Plaintiffs will conduct themselves at trial in accordance with the requirements and limitations set forth in the Federal Rules of Evidence. If Defendants

believe that certain questions and/or testimony are barred by the rules of evidence, Plaintiffs are confident that they will raise their objections at the appropriate time and the Court will rule accordingly.

Plaintiff Karina Casares is Daniel Casares's sister and was his caretaker for approximately two years. The two Plaintiffs are close to each other and have spent a lot of time together before and after Plaintiff Daniel Casares' accident. Plaintiff Karina Casares' has in depth knowledge and first hand observations of Plaintiff Daniel Casares' physical condition, uncontrollable muscle spasms, reflexes and whether he can use his arms and/or hands for anything. For example, Plaintiff Karina Casares testified in her deposition that Plaintiff Daniel Casares kicked her due to a muscle spasm even though Plaintiff Daniel Casares is quadriplegic. See Doc# 196, Exhibit A. This testimony is based on years of personal observation, not on any scientific, technical or other specialized knowledge, and may help would also be helpful to clarify the testimony of other witnesses. Plaintiffs expect that the Defendants will exercise their prerogative to rebut such testimony with contrary observations of Daniel regarding what movements he is capable of making and how well he can control his body.

The Defendants in this motion also seek to bar the Plaintiffs and their witnesses to testify that the Defendants mistreated Plaintiffs and/or used too much force. Again, this motion is premature, overly broad, vague and speculative. The Defendants base this motion on the deposition testimony of Plaintiffs and witnesses, where the rules of evidence do not generally apply as they do at trial. One cannot predict how the testimonies of Plaintiffs, Defendants and the witnesses will unfold at trial. Therefore, this motion should be denied.

13.  **Plaintiffs' "Long Wait" for Justice**

Plaintiffs agree, provided that Defendants do not open the door with a "free pass" argument. *See* Plaintiffs' Motion *in Limine* No. 14, Plaintiffs' Response to Defendants' Motions *in Limine*, § 2B, *supra*, and Introductory Argument, *supra*. Once again, to paraphrase Defendants: "The jury must decide this case on the merits and not base its decision on [Plaintiffs' exercising their rights under the United States Constitution and federal law to seek justice and redress for their injuries in a court of law]." *See* Defendants' Motions *in Limine*, No. 13, ¶ 4. Both sides should refrain from seeking to play upon the prejudices and biases of the jury by selective references to the complicated processes of litigation in federal court that led to this trial, whether to "garner sympathy" or to cast aspersions.

14.  **Testimony regarding others' states of mind.**

Once again, Defendants' motion is overly broad, vague, speculative and premature. Defendants argue that Plaintiffs' and witnesses' opinions as to the reasons behind the actions of others are completely irrelevant. The validity of such objections depend entirely on just what opinion is offered about what subject and in what wording and the objections should be made as appropriate at trial. During the trial, not at this stage of the litigation, the Court will be in the position to determine what testimony is elicited and for what purposes. At that time the Defendants can make any objections that they see fit, and the Court can then make a ruling based on what testimony is actually offered, not what the Defendants now think it might be. Therefore, this Motion should be denied.

15.     **Probable Cause for Traffic Stop**

Plaintiffs do not argue that there was no probable cause to effectuate the traffic stop or that the traffic stop was illegal. There was no traffic stop that resulted in an encounter between the Plaintiffs and the Defendants.  The driver of the car did not receive any traffic tickets or commit any traffic violations by being parked in an alley. The vehicle in question was parked in an alley before the Defendants approached the car. The Defendants had the right to approach the parked car in which Plaintiffs were passengers.

However, there is nothing illegal about stopping a car in an alley and the jury should be apprised of this/ The jury should also be told why the Defendant Officers approached Plaintiff's car and what occurred before the physical encounter between the Plaintiffs and Defendants. The jury will not be confused or punish the Defendants for making an unlawful traffic stop as there was no traffic stop.  The Defendants' observations, actions and reasons for approaching the Plaintiffs and led to the incident at issue is relevant and highly probative. This information will give the jury background facts that will help put the physical encounter into proper perspective. It will also shed light on the totality of circumstances test for the use of force.  The Defendant Officers' observations and knowledge go directly to the totality of the circumstances test. In addition, such evidence will help demonstrate the Defendants' aggressive state of mind as they approached the car with their guns drawn before they smelled and/or noticed any marijuana or failed to notice any traffic violations.  Therefore, Defendants' motion should be denied.

**16.** **Defendant Officer's Involvement in Bar Fights**

      The Plaintiffs do not object to Defendants' motion. However, Plaintiff reserves the right to briefly inquire into Defendant Leech's prior employment history for general background purposes. Additionally, Plaintiff reserves the right to inquire into Defendant Leech's prior fights when working as a bouncer if the Defendants open the door into prior instances of Defendant Leech's conduct.

**17.** **Cell Phone Photos**

      Marco Paredes was present and witnessed the incident between the Plaintiffs and the Defendants. As he was observing the altercation, Mr. Paredes took several pictures with his cell phone of the incident as it was occurring. Mr. Paredes gave his cell phone that contained the pictures of the incident to Plaintiffs' Attorney Nick Albukerk. Mr. Alburkerk provided Defense Counsel with printed and digitized copies of the photographs taken by Mr. Paredes.

      Defense counsel have inspected the cell phone in question, seen the pictures on the phone's screen, and been shown the date and time information regarding when the pictures were taken. Federal Rule of Evidence 901 states that authentication or identification, a condition precedent to admissibility, is satisfied by evidence sufficient to support a finding that the matter in question is what it is proponent claims. Fed. R. Evid 901 "requires only a *prima facie* showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *SP Technologies, LLC v. Garmin Intern., Inc.*, 2009 WL 3188066; quoting *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997).

As noted above, Mr. Paredes took photographs of the altercation between the Plaintiffs and the Defendants as it occurred. Several of the photographs depicts an officer stepping on Plaintiff Daniel Casares' bleeding head. Plaintiff believes that while the photographs are not crystal clear, they do depict what Mr. Paredes claims they depict. Additionally, the pictures along with the pictures of Mr. Paredes' cell phone information showing that the pictures were taken at the exact time and date of the incident, corroborate both the photographs and Mr. Paredes' testimony and expected testimony at trial. The Defendants are free to argue to the jury that the pictures are blurry and do not show what the Plaintiffs and any witness claim.

Lastly, this motion or objection is better suited for trial. It is premature for the Defendants to bring such a motion at this stage. Before the jury is allowed to see the photographs or any evidence, the proper foundation must be laid. If the Defendants believe that Plaintiffs have not laid the proper foundation for the admissibility of these photographs, they may make an objection to the Court. The Court will be in the position at trial to make such a determination after hearing what Mr. Paredes has to say. Therefore, this motion should be denied.

## 18. Sustained CR

*Because Plaintiffs must cite and refer to confidential material, as did Defendants in their motion, Plaintiffs are filing their response to Defendants' Motions in Limine Nos. 18 and 19 under separate cover and under seal.*

19. <u>**Testimony re Underlying Incident in Sustained CR**</u>

*Because Plaintiffs must cite and refer to confidential material, as did Defendants in their motion, Plaintiffs are filing their response to Defendants' Motions* in Limine *Nos. 18 and 19 under separate cover and under seal.*

20. <u>**Collateral Estoppel Effects of Plaintiffs' Criminal Proceedings**</u>

Defendants argue that the Plaintiffs' prior criminal proceeding bars any evidence regarding the limits on Daniel Casares's physical abilities and regarding Karina Casares's actions on the night in question on collateral estoppel and *Heck* grounds. *See* Defendants' Motion *in Limine* No. 20, ¶ 16, *citing Heck v. Humphrey*, 512 U.S. 477, 484 (1984). Defendants are mistaken. Contrary to Defendants' assertions:

- The factual issues Defendants endeavor to resolve through this motion were not "necessary" to the verdicts entered by the state court.

- Under governing Seventh Circuit authority, which Defendants utterly ignore, Daniel's "not guilty" verdict on the obstruction precludes application of collateral estoppel to the factual findings regarding that charge made by the trial court.[2]

- The evidence that Plaintiffs will offer at trial to prove their excessive force and failure to intervene claims have nothing to do with, let alone challenge, their criminal convictions and therefore is not barred by *Heck*.

This motion *in limine* in effect seeks the summary judgment Defendants previously sought, which this Court denied. While the Court noted that Defendants could address the *Heck* issue via a motion *in limine*, Defendants in essence argue the same ground that the Seventh Circuit and this Court reject – "the notion that Plaintiffs are

---

[2] Plaintiffs note Defendants' disturbing proclivity to ignore governing Seventh Circuit authority in this motion. As Plaintiffs' discuss below, *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1020-21 (7th Cir. 2006) and its progeny reject Defendants' collateral estoppel arguments and Defendants fail to even address these precedents, even to distinguish them. Similarly, Defendants largely ignore the governing authority that this Court cited in denying Plaintiffs' motion to brief summary judgment. Defendants overlook *Evans v. Pokson*, 603 F.3d 362, 364 (7th Cir. 2010) and simply cite boilerplate propositions from *Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2006). *See* Defendants' Motions *in Limine* No. 20, ¶¶ 39, 41.

entitled to proceed with their claims only if they admit to the facts supporting their criminal convictions." *See* Order, filed on February 10, 2010, at 2, *citing Evans v. Pokson*, 603 F.3d 362, 364 (7th Cir.2010) and *Gilbert v. Cook*, 512 F.3d 899, 901-02 (7th Cir. 2008). Or, as Defendants put it in their motion: "[Plaintiffs] cannot use [this] civil action to re-litigate facts that were resolved against [them] at [their] criminal trial[,]" at which "Daniel was convicted of battery and obstructing a police officer [sic] and . . . Karina was convicted of obstructing a police officer." Defendants' Motions *in Limine* No. 20, ¶ 48. Defendants were mistaken in their motion for briefing summary judgment and are mistaken here on both the facts and the law. Defendants' motion should be denied.

### A.     <u>Plaintiffs' criminal trial does not preclude litigating their claims.</u>

Under Illinois law, "[c]ollateral estoppel is a flexible doctrine which defies rigid or mechanical application." *Talarico v. Dunlap*, 177 Ill.2d 185, 685 N.E.2d 325, 328 (1997). Illinois law governs this issue and states the three threshold elements for preclusive effect: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Talarico*, 685 N.E.2d at 328. Furthermore, the prior decision on the issue must have been "necessary for the prior judgment" and the issue was actually litigated. *Id.* As an equitable doctrine, collateral estoppel has a fairness element: The doctrine must not be applied "[e]ven where the threshold elements of the doctrine are satisfied," unless "it is clear that no unfairness results to the party being

estopped."[3]  *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 391, 757 N.E.2d 471, 478 (2001).

Most pertinently to this case, the Seventh Circuit has determined that Illinois law makes "collateral estoppel unavailable when . . . the party against whom preclusion is sought was unable to appeal the judgment in the initial action."[4] *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1020-21 (7th Cir. 2006), *citing People v. Mordican,* 64 Ill.2d 257, 356 N.E.2d 71, 73 (1976); *see also People v. Sutherland*, 223 Ill.2d 187, 207, 860 N.E.2d 178 (2006).[5]

### 1. Daniel Casares's acquittal on the obstruction charge bars application of collateral estoppel to the facts relating to that charge.

In addition to the defects in the motion that Plaintiff establishes below, this motion is hopelessly vague and over-broad. Judge Brown stated his presumably unchallengeable "fact" finding in ruling on the Plaintiffs' motion to reconsider as follows: "I also believe that the officer's testimony that Daniel was trying to continually lock the car doors.[6] See Exhibit E to Defendants' Motion in Limine No. 20 ("Defs. Mtn. No 20") at 12:17-18. Defendants render this "fact" as:"[T]he criminal court found that Daniel did in fact . . . *lock the doors* in an effort to impede the other officers' ability to

---

[3] In addition, the party to be estopped did not have a "full and fair opportunity or an incentive to vigorously litigate the issue in the prior proceeding." *Talarico*, 685 N.E.2d at 328. Plaintiffs do not contest that their criminal proceeding meets these criteria.

[4] Illinois courts call this a "peculiar circumstances" exception to the application of collateral estoppel. *See Lyttle v. Killackey*, 546 F.Supp.583, 589 (N.D.Ill. 2008)(denial of motion to dismiss disorderly conduct charge on ground the underlying ordinance was unconstitutional did not estop arrestee acquitted of the charge from challenging the ordinance in a federal action under Section 1983), *citing Mordican*, 356 N.E.2d at 73-74.

[5] The *Sornberger* Court acknowledged that the Illinois Supreme Court has applied this principle only in the criminal court. But mindful of its obligation to predict how the state's highest court would rule, the Seventh Circuit concluded that the Illinois Supreme Court would extend *Mordican* to Section 1983 actions. *See Sornberger*, 434 F.3d at 1021-22.

[6] In his statement of the verdict after the bench trial, Judge Brown put it this way" "I think Mr. Casares was trying to defeat this arrest by unlocking and locking the doors of the car." Def. Mtn. No. 20, Exh. D at 160:12-14.

- 21 -

open the car door and secure Daniel." Defs. Mtn. No. 20, ¶ 44, emphasis added. Alternatively, Defendants believe that the trial court found "that Daniel continually locked the doors [sic]." *Id.*, ¶ 35. Not at all – what the court found was that Daniel "was *trying* to continually lock the car doors." Even if, *arguendo*, Defendants' motion had any sound legal basis, it is impossible to determine just what testimony would be "contrary" to the trial court's 19-word "finding" and thereby precluded from the trial.

However even if the court's finding, *arguendo*, was as the Defendants believe, Plaintiffs are not estopped to offer evidence regarding this allegation for the reasons discussed in this Response. Defendants argue that "the criminal court's finding that Daniel continually locked the doors precludes Plaintiffs from offering testimony contrary to that finding at the civil trial. Defendants are mistaken as a matter of law. Under governing Seventh Circuit authority, Daniel Casares is not estopped to litigate the criminal court's findings regarding whether he tried to lock and unlocked the car door because he was acquitted on the charge of obstructing a police officer, the charge which the alleged "fact" purported supported.[7]

Even if, *arguendo*, he did so act, the issue in this case is whether the Defendant Officers use of force *after* this alleged "resistance" was reasonable under the circumstances. The question of Daniel's locking and unlocking the door is irrelevant to that issue.

---

[7] Judge Brown stated at the conclusion of the bench trial: "I think Mr. Casares was trying to defeat this arrest by unlocking and locking the doors of the car. *See* Exhibit D to Defendants' Motion *in Limine* No. 20 at 160:12-14. Plaintiffs submit that this sparse sentence does not necessarily constitute a definitive factual finding and renders Defendants' motion *in limine* vague and over-broad. Judge Brown found that Daniel "was *trying* to continually lock the car doors." What does this mean? Defendants appear to contend However even if it does, *arguendo*, Plaintiffs are not estopped to offer evidence regarding this allegation for the reasons discussed in this Response.

Moreover, Daniel's acquittal on the charge of obstructing a police officer removes collateral estoppel from this case. In *Sornberger*, 434 F.3d at 1023, the Seventh Circuit held that the trial court's finding that defendant voluntarily confessed to participating in a bank robbery did not estop her litigating this issue in a subsequent Section 1983 action after she was acquitted of the charge. *See also Simpkins v. City of Belleville, Ill.*, 2010 WL 1849348, *1 (S.D.Ill. May 7, 2010)(reasoning that, under governing Seventh Circuit authority, "in Section 1983 actions, . . . the use of collateral estoppel [is barred] against a party who had no chance to appeal a prior finding")

In *Simpkins*, Belleville police were in the process of citing four young men for failing to disperse when ordered to do so. One of them was the nephew of Ms. Simpkins, an East St. Louis Police Officer, who stopped to protest the Belleville officers' issuing the citations. Ms. Simpkins allegedly grew loud and belligerent and refused to step aside when ordered to do so. She was charged with obstructing a police officer by failing to obey an officer's lawful order to disperse and by becoming loud and disruptive to police officers while they were attempting to disperse a crowd. After a bench trial, she was found not guilty. *Id.* at *2. In his written order the trial judge indicated that he believed the defendants and denounced "the belligerent behavior [against police officers that] was committed by a fellow law enforcement officer who should know better." *Id.* Simpkins subsequently filed a federal action against the Belleville officers for false arrest and malicious prosecution. *Id.*

The district court unequivocally rejected the identical argument that Defendants make here:

> It would be unfair to collaterally estop Simpkins from relitigating whether she was belligerent because, in light of her victory in the criminal case,

> *she did not have an opportunity to challenge that factual finding by appealing the state court judgment.* This is true even if the state court judgment would likely have been affirmed because it turned on credibility findings.

*Id.* at *6, emphasis added. The court explained: "[C]ollateral estoppel should not apply to a pretrial finding in a criminal case where the defendant is ultimately acquitted and therefore has no opportunity to challenge the pretrial finding on appellate review." *Id.*, citing *Mordican*, 356 N.E.2d at 72.

Sorenberger and its progeny govern this case. Daniel's acquittal on the charge of resisting arrest precluded his appealing the trial court's finding that he "continually locked the doors." Def. Mtn. No. 20, ¶ 35. Accordingly, Defendants cannot invoke collateral estoppel to prevent Plaintiffs from offering evidence on this point. That the trial court presumably believed the Defendants' testimony and not Daniel and Karina's makes no difference. (Def. Mtn. No. 20, ¶¶ 32-33.) This was precisely the contention that the *Sorenberger* Court rejected. *See Sorenberger*, 434 F.3d at 1022 (a trial court's ruling did not acquire collateral effect because it "rested on credibility determinations"). Nor is Defendants' motion aided by their assertion that Daniel's acquittal after his motion to reconsider rested on a "legal technicality." *See Lyttle v. Killackey*, 546 F.Supp.2d 583, 589 n.3 (reasoning that where the prior decision was based on a legal issue, applying collateral estoppel would be unfair).

Lastly, the trial court's "finding" does not meet the "necessary" element of collateral estoppel. A finding does not have preclusive effect is if was not "necessary" to the judgment, *i.e.*, if the judgment did not depend on that finding. *See Talarico*, 685 N.E.2d at 328. In *Simpkins*, the district court held that the trial court's finding that Simpkins was belligerent with the Belleville officers was not necessary to uphold the

judgment. *See Simpkins*, 2010 WL 1849348 at *5. To explain its reasoning, the Court posed a common-sense test: "If [the trial court' had found otherwise – that Simpkins *had not* been belligerent – the result of the case would have been the same – a judgment of acquittal. *Id.* Thus, the disposition of the criminal case did not turn on finding that Simpkins was belligerent and that finding was clearly not necessary to the judgment. Therefore, it could have no preclusive effect. *Id.*

The same is true here. Judge Brown's purported finding regarding Daniel and the locking of the door, however one understands the finding, was not "necessary" to the judgment of acquittal. The trial court granted the motion to reconsider and entered a verdict of not guilty apparently because Daniel had not obstructed the police officer named in the criminal charge, Officer Szubski. *See* Def. Mtn. No. 20, Exh. E at 12:2-7. Applying the *Simpkins* court's reasoning, the finding noted above was not necessary to the judgment because the trial court would have ruled the same way even if it had found that Daniel "was [not] trying to continually lock the car doors." *Id.* at 12:17-18.

For all the above reasons, Defendants' Motions *in Limine* No. 20 should be denied as to the facts relating to the obstruction charge on which Daniel was acquitted.

### 2. Daniel Casares's conviction on the charge of battery does not have preclusive effect as to all facts related to that charge.

In his ruling on the motion to reconsider, Judge Brown stated:

Defense counsel argued that it was a voluntary muscle twitch that caused Daniel to strike Officer Bernal. I don't believe that. As I observed during the trial during his testimony, Mr. Casares' testimony, he was able to easily move his arm. I believe it was an intentional battery. Def. Mtn. No. 20, Exh. E at 12:11-16.[8]

---

[8] The court's finding after the bench trial was the same: "I also believe that [Daniel] struck Officer Bernal in the face. And I believe it was intentional." Defs. Mtn. No. 20, Exh. D at 160:14-16.`

As above, Defendants overreach and thus their motion is vague and over-broad. Defendants read the court's finding as rejecting the claim that Daniel was "physically *incapable* of punching Officer Bernal . . ." Def. Mtn. No. 20, ¶ 19 (emphasis original). Later in the motion, Defendants argue even more globally: "Daniel's conviction for batter precludes any testimony that Daniel could not or did not punch Officer Bernal. *Id.*, ¶ 35. In fact, Judge Brown made no finding that Daniel "intentionally made a fist" and no finding that Daniel was "physically incapable of punching Officer Bernal" (*Id.*, ¶ 33) and one searches Defendants' record citations in vain to locate these purported findings. Again, Plaintiffs and this Court are left wondering just what testimony Defendants' motion would bar.

Even if, *arguendo*, the trial court did make such findings, they would not have preclusive effect because the judgment on the battery charge did not depend on them. The court could have found Daniel guilty of battery even if it found that Daniel could not make a fist or was physically capable of punching Officer Bernal (assuming for the moment that "punching" implies making a fist). Judge Brown found that Daniel had struck Officer Bernal by moving his arm. At a minimum, even assuming any preclusive effect, Plaintiff is not estopped from presenting evidence regarding whether Daniel is able to "make a fist" or to "punch" someone.

More broadly, Defendants appear to contend that Judge Brown's finding precludes Plaintiffs from presenting *any* evidence pertaining to the scope of Daniel's physical ability to move his left arm. This contention misses the mark. Judge Brown's finding of intentional battery does not foreclose all exploration of how much of Daniel's movement of his left arm was intentional and how much uncontrolled. A finding of

intentional battery under Illinois law does not *necessarily* mean that the tortfeasor intended the final result of her action; under the doctrine of "transferred intent" it is enough to prove that the defendant intended *a* battery but the victim was not the intended target. *See*, *e.g.*, *People v. Dorn*, 378 Ill.App.3d 693 (4th Dist. 2008)(affirming conviction for aggravated battery on charge that the defendant spit on a correctional officer despite testimony that defendant was trying to spit on another inmate, but hit the officer instead); *In re Joel L.*, 345 Ill. App. 3d 830, 833, 803 N.E.2d 592, 594(2004)(finding the evidence supported the conclusion that the minor's conduct in kicking the table was intentional and the bodily harm to the officer that resulted was a natural consequence of the intentional act).

Thus, the trial court's finding of intentional battery does not necessarily have the broad, almost boundless preclusive effect that Defendants urge. If, *arguendo*, evidence were adduced at trial that to the extent Daniel consciously moved his left arm, he was trying to fend off Officer Williams, who admittedly struck Daniel in the face, and struck Officer Bernal in the process. In such a scenario, a finding of battery might still be proper under the doctrine of transferred intent. Thus it is clear that the factual finding of the trial court, at least as rendered by the Defendants, was not necessary for the trial court's battery verdict against Daniel Casares.

### 3. Karina Casares's conviction on the charge of obstruction does not have preclusive effect as to all facts related to that charge.

For similar reasons as above, the preclusive effect Karina Casares's conviction for obstructing a police officer is not nearly as broad as Defendants assert. Initially, Plaintiffs note that their claim is that the force used in effecting the arrest of Karina was unreasonable under the circumstances. Karina's conviction of obstruction has little to do

- 27 -

with Plaintiffs' claim that Defendants' throwing Karina to the ground and kicking and punching her while effecting her arrest on that charge. Thus, evidence relating to Karina's and the Defendant Officers' actions that led up to her arrest are highly relevant to the claims in this case and are not precluded by Karina's conviction.

As has been their pattern throughout this motion *in limine*, Defendants reach too far in their application of collateral estoppel. At the conclusion of the bench trial, Judge Brown stated that Karina "sat on the hood of the car" during the officers' investigation, that she was "telling them to put their guns away which she has no right to do, and in some unspecified manner "interfered with [the investigation]." Defs. Mtn, No. 20, Exh. D at 161:9-162:2. In his ruling on the motion to reconsider, the Judge stated that he "believe[d] she tried to obstruct the officers when they tried to make the arrest and impound the car. She sat on the hood of the car. She flailed her arms. [She would not] stand at the side and let the officers do what they had to do. She did not do that. She was combative with them." *Id.*, Exh. E at 12:21-13:4. In Defendants' version, Judge Brown found that Karina was "combative" and *physically interfered* with the Officers." Def. Mtn. No. 20, ¶ 19. Yet one more time, Defendants distort the trial court's finding and a careful reading of Defendants' record citations disclose no finding that Karina "physically interfered" with the Officers. *Id.* And once again, the Court and the Plaintiffs must guess as to precisely what evidence Defendants believe is precluded by Karina's conviction.

This is not an idle inquiry in light of testimony by the Defendant Officers that contradicts Judge Brown's finding. As noted above, Judge Brown found that Karina's "interference" occurred while she was seated on the hood of the car. In a hearing arising

from the impounding of Daniel's car, Officer Verdin testified Karina was "placed in custody because she was screaming, chanting, *pretty much roughing everyone up that was coming out of the home right there*, so she was placed in custody."[9] *See* Exh. B at 18:10-13. The arrest report for the night at issue in this case refers to Karina's allegedly interring with the arrest by pushing and hitting Defendant Officers Verdin and Szubski. Thus Judge Brown's finding that Karina interfered with the officers while sitting on the hood of the car was not necessary to his judgment of guilty on the charge of obstruction. If the facts turn out as Officer Verdin testified and the arrest reports indicate, Karina, *arguendo*, may still have been convicted on that charge. Accordingly, Karina's conviction on obstructing a police officer does not warrant precluding any testimony regarding her actions and those of the Officers that preceded her arrest . Defendants' motion should be denied.

### B. *Heck* does not bar Plaintiffs' claims.

As in their abortive motion regarding summary judgment, Defendants argue that Plaintiffs' claims for excessive force and failure to intervene are essentially barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)(holding that a Section 1983 plaintiff convicted of a crime cannot maintain their claim where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . ."). The argument has no more merit now than it did then. Indeed, the argument that Defendants make now borders on the frivolous: "Plaintiffs' argument that Daniel did not intentionally punch Officer Bernal or lock the doors and Karina did not become combative so that *no*

---

[9] Excerpts from the hearing on November 21, 2006 at the City of Chicago's Central Hearing Facility are attached hereto as **Exhibit B**.

*force was necessary* operates as an argument that they did not commit the crimes for which they were convicted." Defs. Mtn., ¶ 47 (emphasis added)..

The three premises Defendants assert have little to do with the criminal convictions at issue or the claims in this case, for all the reasons articulated above. Moreover, the argument pushes *Heck* to the brink and beyond. *Heck*, then, is implicated not just when a judgment for a Section 1983 plaintiff "*necessarily* impl[ies] the invalidity of the conviction;" it is enough if there is a *possibility* of invalidation. Moreover, in this view, if Plaintiffs claim *excessive* force when they are arrested them for battery and obstruction, Plaintiffs *must* be insisting that *any* use of force is unreasonable unless they were ultimately convicted on those charges. This makes little sense and renders *Heck*'s "necessarily-implies-invalidity" superfluous. More disturbingly, the argument suggests that, if a Section 1983 was convicted of battery or obstruction, *any* claim of excessive force necessarily challenges the conviction.

The Seventh Circuit emphatically rejects this argument:

Were we to uphold the application of *Heck* in this case [where an arrestee convicted of resisting arrests claims excessive force], it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages. Put another way, police subduing a suspect could use as much force as they wanted and be shielded from accountability under civil law – as long as the prosecutor could get the plaintiff convicted on a charge of resisting. This would open the door to undesirable behavior and gut a large share of the protections provided by §1983." *Vangilder v. Baker*, 435 F.3d 689, 692 (7th Cir.2006).

As this Court explained in its order denying Defendants' motion requesting leave to file a summary judgment motion, a Section 1983 plaintiff, convicted of battery or resisting, does not have to admit all the facts supporting his conviction in order to establish that unreasonable force was used when he was arrested on those charges. *See*

February 10, 2010 Order [Dkt. No. 169] *citing Evans v. Pokson*, 603 F.3d 362, 364 (7th Cir. 2010) and *Gilbert v. Cook*, 512 F.3d 899, 901-02. The case law in this Circuit supporting this principle is voluminous.[10]

None of the cases that Defendants rely upon disturb this principle. In each case, the facts of the charge on which the plaintiffs were convicted intertwined with their excessive force claims. *See*, *e.g.*, *Matthews v. Mariner*, 2009 WL 5217113, *2 (S.D.Ind. Aug. 23, 2009)(Section 1983 excessive force plaintiff necessarily challenges his conviction for forcibly resisting arrest by alleging that he did not fight back against the defendant officers).[11] In this case, there is no nexus between Plaintiffs' convictions and Defendants' use of force, as there is in the cases that Defendants cite. The force in effectuating Daniel's arrest does not imply – necessarily or otherwise -- the invalidity of his criminal conviction. That Plaintiff was found to have committed a battery does not mean that the arresting officers did not engage in an appropriate, reasonable use of force. As discussed above, Daniel was acquitted on the charge of obstruction, thus Defendants reliance on the court's purported finding that he "locked the car door to interfere with the officers" (Def. Mtn, ¶ 46) to argue a *Heck*-bar simply lacks merit. In addition, as the numerous cases cited above establish, Karina's excessive force claim does not necessarily challenge the validity of her conviction for obstruction.

Defendants' *Heck* argument is mistaken and the motion should be denied.

---

[10] See, *inter alia*, *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 761 (7th Cir. 2008)(plea of guilty to resisting a peace officer did not bar plaintiff's excessive force claim); *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir.2006) (aggravated assault and obstruction conviction did not bar excessive force); *Robinson v. Doe*, 272 F.3d 921, 923 (7th Cir.2002) (drug conviction did not *Heck*-bar excessive force claim*); Wilson v. Keske*, 2010 WL 4065665, *2 (N.D.Ill 2010) (aggravated battery guilty plea did not preclude excessive force claim); *Zarate v. City of Chicago*, 2010 WL 2837171, *1 (N.D.Ill. 2010)(guilty plea on charge of attempted robbery guilty did not bar excessive force claim).

[11] Defendants erroneously cit this case as a 2009 Northern District of Illinois decision, found at 2009 WL 5217113. *See* Defs. Mtn, ¶ 46.

**21.** <u>**Collateral Estoppel and Daubert Bars Certain Expert Testimony**</u>

    **a.**    **Plaintiffs are not precluded from present Dr. Lazar's testimony.**

Defendants' invoke the same arguments employed in Defs. Mtn. No. 21 in an effort to bar those portions of Dr. Lazar's testimony that relates to Daniel Casares's ability to use his left arm. Defendants argue that Plaintiffs are precluded from presenting this testimony on the same grounds that Plaintiffs are allegedly estopped to contest the "facts" underlying Daniel's battery conviction. Defendants' collateral estoppel and *Heck* arguments fail here for the same reasons stated above in response to motion No. 20

    **b.**    **Plaintiffs' expert meets the *Daubert* standard.**

Under Fed. R. 702 and *Daubert*, the 7th Circuit has developed a three-step analysis for the admissibility of expert testimony: 1) The witness must be qualified as an expert by knowledge, skill, experience, training or education, 2) the expert's reasoning or methodology underlying the scientific testimony must be scientifically reliable, and 3) the testimony must be relevant or assist the trier of fact to understand the evidence or to determine a fact in issue. *Paine ex rel. Eilman v. Johnson*, 2010 WL 749860 *1 (N.D. Ill 2010); citing *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). The first step is not an issue; Defendants agree that Dr. Lazar has the requisite education and training to qualify him as an expert.

The Defendants main argument is that the second step is not fulfilled, because Dr. Lazar's opinions are based on speculation and assumption. Specifically, the Defendants argue, that Dr. Lazar's opinions are mainly based on his general knowledge of C7 quadriplegics and not Plaintiff Casares' specific medical condition. The Defendants completely distort Dr. Lazar's testimony regarding his reasons for his opinions. Dr.

Lazar testified in his deposition that he viewed numerous medical reports and documents from Plaintiff's previous medical providers in preparing his report.[12] Lazar Deposition ("Lazar Dep.") at 26-30. Dr. Lazar also explained in great detail that examining the Plaintiff in 2010 would not have assisted him in proving expert opinions as to Plaintiff's condition in 2006, because Plaintiff's physical condition would have significantly deteriorated after four years. *Id.* at 33-35.

Fed. R. Evid. 703 states "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived **by or made known to the expert at or before the hearing**." The courts examine whether the expert's conclusions are testable, subjected to peer review or publication, produced by a reliable method using some discernible technique, and the result of a generally accepted methodology or process. *See Zenith v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 418 (7th Cir. 2005). Additionally, it is a proper method and reasonable for medical experts to rely on reports, diagnosis and observations of other medical providers and other circumstantial evidence as a basis when forming their own expert opinions and conclusions. *See Paine ex rel. Eilman v. Johnson* at *3-4; *Walker v. Soo Line R. Co.,* 208 F.3d 581, 586-587 (7th Cir. 2000); *Birdsell v. United States,* 346 F.2d 775, 779-780 (5th Cir. 1965) ("With the increased division of labor in modern medicine, the physician making a diagnosis must necessarily rely on many observations and tests performed by others and recorded by them."). In *Paine*, the Seventh Circuit stated that the patient's health records were appropriate foundations for the expert's opinion about Plaintiff's future medical needs. *Paine ex rel. Eilman v. Johnson* at *3. Dr. Lazar relied on numerous medical reports, records facts, and observations from Plaintiff's health treaters as well as his exceptional

---

[12] Excerpts from Dr. Lazar's deposition testimony are attached hereto as **Exhibit A.**

education, training and experience in neurorehabilitation when forming his opinions and conclusions. As a qualified expert in neurology and neurorehabilitation, Dr. Lazar stated that examining the Plaintiff four years after the date of incident at issue would have done little if anything to assist him in determining Plaintiff's physical capabilities at that time. Therefore, Dr. Lazar's reliance on Plaintiff's medical histories is a generally accepted methodology.

The Defendants also argue that Dr. Lazar utilized a faulty methodology in determining his opinions, because Plaintiff testified that he is able to do things that Dr. Lazar said he cannot. The crux of Defendants' contention is that Plaintiff made a fist during his deposition and that this calls into question Dr. Lazar's conclusion that Plaintiff is incapable of making a fist with his left hand. First, the Plaintiff disputes that he made a fist during his deposition. The Defendants state that Plaintiff made a fist during his video deposition at 56:25-45 and 1:20:35-45. However, Plaintiffs' counsel viewed the video depositions at the stated times and failed to observe any movement by Plaintiff that resembles him making a fist. Plaintiffs' counsel will confer with Defense counsel to determine if the time mark is misstated and/or the timing of the video deposition is not synchronized between Plaintiffs' and Defendants' copy of the video. If Plaintiff's counsel can determine what the Defendants are referring to, Plaintiffs will supplement their response. Moreover, Dr. Lazar did view Plaintiff's deposition video and believes that all of Plaintiff's movements are consistent with his expert opinion and deposition testimony. In any event, Plaintiffs have never posited that Daniel Casares cannot weakly bring his fingers together, simply that he lacks the power to make a hard fist capable of inflicting serious injury.

In paragraph 13 of the Defendants' motion, Defendants assert that Dr. Lazar's opinion that Plaintiff cannot make a fist was based entirely on Plaintiff being termed a C7 quadriplegic. Defendants misstate Dr. Lazar's testimony. Dr. Lazar testified that based upon Plaintiff being a C7 quadriplegic and his review of the records, his opinion is that Plaintiff cannot make a fist. Lazar Dep. at 112. Defendants also state that Plaintiff has some feeling below his nipples even though Dr. Lazar opined that he does not have the ability to feel below the level of injury. Plaintiff is not in a position to reliably self-diagnosis and he has often misstated his own diagnosis due to wishful thinking and confusion regarding his medical condition. The Defendants also point to Plaintiff's deposition testimony, in which he stated that he is able to brush his teeth and hair, feed himself burgers and help put his shirt on. Dr. Lazar stated that Plaintiff would not be able to do these specific acts given his medical condition. The only real question is whether Plaintiff has the ability to grip with enough strength to make a tight fist. Defendants' counsel did not inquire as to how Plaintiff brushes his teeth and hair or feeds himself burgers. For example, Plaintiff can loosely hold a toothbrush in his left hand and move his mouth from side to side. Plaintiff has become adept at balancing small objects in his left hand, which is supported by Dr. Lazar's testimony and opinions.

In *Walker*, the Court held that the trial court abused its' discretion when it refused to allow a doctor to testify as an expert because the underlying data on which the doctor relied upon was inaccurate which in turn would have effected the doctor's opinion. *Walker v. Soo Line R. Co.,* at 586. The Court stated that the relevant inquiry pursuant to *Daubert* is whether the expert testimony and opinion was based on acceptable methodology. *Id* at 586-587. The Court also noted that pursuant to *Daubert* any

inaccuracies in the factual underpinnings of the expert testimony should be presented during a vigorous cross-examination to attack the credibility of the expert's opinion and call his conclusions into question. *Id*. The Court held that the expert employed a proper methodology by relying on others' reports and information even though that information might have been inaccurate. *Id*.

Lastly, the Defendants argue that Dr. Lazar's opinions are beyond the scope of his expertise. Dr. Lazar is a world renowned physiatrist. Dr. Lazar is not going to testify to handcuffing procedures, physical maneuvers that are used to control people or the use of paradigm. As a medical expert, Dr. Lazar is simply going to testify as to whether someone with Plaintiff's diagnosis has enough strength, dexterity, range of motion and balance to forcefully resist any able bodied persons.

Dr. Lazar has decades of experience dealing with people who have the same condition as Daniel Casares. Dr. Lazar also has experience dealing with people who are paraplegic. Even if Defendants were correct and Plaintiff has slightly better functioning or diagnosis than those determined by the Chicago Rehabilitation Institute, the Defendants must still argue that Plaintiff could substantially resist the Defendant Officers. This is best left to cross-examination. It is up to the trier of fact to determine what Plaintiff Daniel Casares's level of function is.

Defendants' motion should be denied.


May 9, 2011


Respectfully submitted,

/s/ Dan Dorfman
Dan Dorfman


- 36 -

One of Plaintiff's Attorneys

**The Blake Horwitz Law Firm, Ltd.**
20 S. Clark, St., Ste. 500
Chicago, Illinois 60603
Telephone: (312) 676-2100
Fax: (312) 372-7076