## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL CASARES and KARINA** | ) | |
| **CASARES,** | ) | |
| | ) | **08 CV 4198** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Young B. Kim** |
| **OFFICER BERNAL,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | **May 20, 2011** |

### MEMORANDUM OPINION and ORDER

Plaintiffs Daniel and Karina Casares bring this civil rights action under 42 U.S.C. § 1983, claiming that the seven defendant police officers violated their constitutional rights by using excessive force against them in the course of an arrest that took place on October 6, 2006. According to Plaintiffs, Defendants dragged Daniel—who has been a quadriplegic since 2002 and has limited use of his arms and hands—out of a car where he was sitting and hit and kicked him repeatedly. (R. 51, Second Am. Compl. ¶¶ 7-8.) They also hit and kicked Karina repeatedly when she yelled at them to stop beating Daniel. (Id. at ¶¶ 9-10.) According to Defendants, they used only reasonable force in arresting Daniel for striking a police officer in the face and Karina for interfering with Daniel's arrest. The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c). Currently before the court are Plaintiffs' motions in limine numbers 5, 19, 22, 24, and 26, and Defendants' motions in limine numbers 12, 18, 19, 20, 21, and 23. For the following reasons, the motions are granted in part and denied in part as follows: Plaintiffs' motion in limine number 5 is granted; Plaintiffs' motion

in limine number 19 is granted in part and denied in part; Plaintiffs' motions in limine numbers 22, 24, and 26 are denied; Defendants' motions in limine numbers 12 and 19 are denied; Defendants' motion in limine number 18 is granted; and Defendants' motions in limine numbers 20, 21, and 23 are granted in part and denied in part.

## Legal Standard

Included in the district court's inherent authority to manage trials is the broad discretion to rule on motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The purpose of a motion in limine is to prevent the jury from hearing evidence that is "clearly inadmissible on all possible grounds." *Anglin v. Sears, Roebuck & Co.*, 139 F.Supp.2d 914, 917 (N.D. Ill. 2001). Accordingly, in some instances it is best to defer rulings until trial, where decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *Id.* "A pre-trial ruling denying a motion in limine does not automatically mean that all evidence contested in the motion will be admitted at trial." *Delgado v. Mak*, No. 06 CV 3757, 2008 WL 4367458, at *1 (N.D. Ill. March 31, 2008). And although a ruling granting a motion in limine excludes the introduction of certain evidence, the court may revisit evidentiary rulings during trial as appropriate in its exercise of discretion. *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

**Analysis**

I.      **Defendants' Motions in Limine**

A.      **No. 12, To Bar Lay Opinions on Plaintiff Daniel Casares's Medical Condition or What He Is Capable of Doing**

Defendants seek to prevent Karina and other lay witnesses from testifying as to the kinds of movements Daniel is capable of making or giving their opinions regarding what kind of force would be necessary to arrest Daniel.  Federal Rule of Evidence 701 states that lay witnesses are permitted to give opinions which are "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge."  In other words, "[l]ay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events."  *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001)).

Defendants' request to exclude lay opinions sweeps too broadly.  Under Rule 701, Karina and other witnesses who know Daniel will be allowed to describe their first-hand perceptions of Daniel's physical condition, as long as their testimony does not conflict with his criminal conviction for battery, as explained below in part I-D.  To the extent that their testimony strays into the realm of specialized or technical interpretations of Daniel's movements or legal conclusions regarding the level of force necessary to arrest him, the

3

admissibility of those statements will be dealt with best at trial, where objections can be presented in context. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F.Supp. 1398, 1401 (N.D. Ill. 1993). Defendants' motion in limine number 12 is denied.

**B.    No. 18, To Bar Evidence or Testimony Relating to a Sustained Complaint Register**[1]

Defendants move to prevent Plaintiffs from submitting evidence regarding a sustained complaint register ("CR") lodged against one of the defendant officers ("the accused officer"), in which he/she was accused of: (1) grabbing an arrestee, choking him, and slamming him to the ground outside the police station; (2) pushing the arrestee inside the station and causing his head to slam against the wall; and (3) providing false information regarding the arrest in case reports and in the Office of Professional Standards' ("OPS") subsequent investigation. The OPS investigator sustained allegations that the accused officer choked, pushed, and slammed the arrestee to the ground, provided false information in the arrest and case reports, and gave a false statement to OPS during the investigation by stating that his/her use of force was in response to the arrestee's resistance. The accused officer was suspended for 30 days as a result of the sustained allegations. According to Defendants, any allusions to this incident represent inadmissible and unduly prejudicial propensity evidence.

---

[1]    Because there is a protective order in place in this case, Defendants filed redacted versions of motions in limine numbers 18 and 19 with the clerk's office and provided the court with unredacted versions. The court has made every effort to ensure that this opinion does not include any confidential information. The parties should contact the court immediately if the opinion conveys any information that is subject to the protective order.

Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." It may be admissible, however, to show motive, opportunity, intent, plan, knowledge, identity, or absence of mistake. *Id.* To determine admissibility under Rule 404(b), the court must consider whether: "(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011). A trial judge is not required to permit a plaintiff in an excessive force case to introduce a defendant officer's prior disciplinary history. *Okai v. Verfuth*, 275 F.3d 606, 611 (7th Cir. 2001).

Here, Plaintiffs assert that they seek to introduce evidence regarding the sustained CR not to show the accused officer's propensity for violence or untruthfulness, but to show "intent, plan, absence of mistake, training in and knowledge of proper police procedures, and trustworthiness." (R. 224, Pls.' Resp. at 3.) More specifically, they argue that it is "admissible to show that [the accused officer] intended to use unreasonable force on Plaintiff Karina Casares and that the degree of force [he/she] used was not accidental or a mistake," and that the accused officer's acts in "falsifying [his/her] factual account as to [his/her]

battery and assault of the complainant, keenly demonstrates [his/her] state of mind, *i.e.*, [his/her] knowledge and intent to injure, as well as [his/her] need to justify the unreasonable and disproportionate beating of Plaintiffs." (Id. at 4-5.) Plaintiffs' point is well-taken with respect to their argument that the accused officer's shifting explanations of the conduct underlying the CR is relevant to show his/her alleged knowledge and intent to justify his/her use of force after-the-fact. But their argument that the previous use of force demonstrates the accused officer's intent to use excessive force against Daniel is more problematic. This court recognizes that there have been excessive force cases in this district in which the court allowed evidence of an officer's prior use of excessive force to come in to demonstrate the officer's "intent to commit assault and battery in the case at bar." *See Edwards v. Thomas*, 31 F.Supp.2d 1069, 1074 (N.D. Ill. 1999); *see also Finley v. Lindsay*, No. 97 CV 7634, 1999 WL 608706, at *3 (N.D. Ill. Aug. 5, 1999). But as Defendants point out, whether the accused officer subjectively intended to use excessive force or to hurt Karina is not relevant to the excessive force analysis, which asks "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). That is because "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* Under the *Graham* explanation of the excessive force inquiry, this court believes that the CR is not admissible to show that

the accused officer intended to use excessive force against Karina, but may be admissible to show his/her knowledge of his/her need to excuse his use of force.

Most motions seeking to introduce prior disciplinary records seem to live or die with the second prong, *compare, e.g., Akbar v. City of Chicago*, 06 CV 3685, 2009 WL 3335364, at *2 (N.D. Ill. Oct. 14, 2009), *with Petrovic v. City of Chicago*, No. 06 CV 6111, 2008 WL 818309, at *3 (N.D. Ill. March 21, 2008), which requires the court to analyze whether the prior act is "of recent vintage and sufficiently similar to be relevant to the matter in issue," *Okai*, 275 F.3d at 610. Here, the incident underlying the sustained CR and the accused officer's actions in justifying his/her use of force against Karina are sufficiently close in time. The incident underlying the sustained CR took place only 20 months before the Casares incident, and the investigation was completed only five months before. *See United States v. Torres*, 977 F.2d 321, 327 (7th Cir. 1992) (noting that 20-month period between incidents meets the temporal requirement of Rule 404(b)). But Plaintiffs' explanation of the accused officer's shifting explanations in this case are insufficiently similar in nature to his/her false statements made in connection with the sustained CR. In the prior incident, the accused officer completely omitted any reference to his/her use of force from his/her initial report and only amended his/her report to describe the force used after it had been approved by his/her supervisor. Here, the accused officer acknowledged that he/she used force against Karina from the get-go. And none of the supposed inconsistencies to which Plaintiffs point establish the requisite similarity between his/her prior dishonesty and what happened here. For

example, they emphasize that the accused officer approved an arrest report stating that Karina had shoved and hit him/her in the chest before he/she subdued her, but then signed a tactical response report that says Karina failed to follow verbal commands, stiffened, and pulled away. But the tactical report simply provides space for an officer to check boxes to describe the arrestee's conduct, and the fact that the language on the form does not line up precisely with the accused officer's first-hand description of Karina's actions hardly demonstrates that he/she attempted here, as in the previous incident, to hide his/her use of force from his/her supervisor. Plaintiffs also point to the fact that the tactical report states that the accused officer performed a take-down of Karina, but at a subsequent tow hearing, the accused officer testified that he/she did not even watch the take-down. (R. 224, Ex. B, Tr. at 19.) That is certainly a matter about which the Plaintiffs will be permitted to cross-examine the accused officer, but it is not sufficiently similar to the conduct underlying the sustained CR to meet the second prong of the 404(b) analysis.

Similarly, and in the interest of completeness, the court notes that even the accused officer's use of force in the prior and current incidents are different enough to prevent them from clearing the second prong's hurdle. In the prior incident, the accused officer was found to have mistreated a male arrestee by choking him and throwing him to the ground while he was already handcuffed. (R. 212, Ex. A.) Here, the accused officer allegedly took Karina to the ground as she was moving toward him/her, and used the take-down to accomplish the task of handcuffing her. Because there are no obvious commonalities among these two

instances of force, the aspect of the CR pertaining to the force findings are inadmissible under prong two as well.

Turning to prongs three and four, because the CR was sustained, a jury could find that the accused officer committed the prior act. *Hicks*, 635 F.3d at 1069. But given the limited probative value of the sustained CR for the substantive purpose of demonstrating the officers' intent, here the Rule 403 analysis that is incorporated into prong four falls in favor of Defendants. The danger that the jury will draw improper propensity conclusions from the sustained CR is high, *see Donald v. Rast*, 927 F.2d 379, 381 (8th Cir. 1991), as is the danger that introducing this evidence will result in a distracting mini-trial within the trial. Accordingly, Defendants' motion in limine number 18 is granted with respect to direct evidence regarding the sustained CR.

### C. No. 19, To Bar Plaintiffs From Cross-Examining a Defendant Officer Regarding the Events Underlying the Sustained Complaint Register

Defendants argue that Plaintiffs should be barred from cross-examining the accused officer regarding the incident underlying the sustained CR because, according to them, the potential prejudice to the accused officer outweighs its probative value with respect to his/her character for truthfulness. Federal Rule of Evidence 608(b) states that specific instances of a witness's conduct may, "if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." Whether to

allow past instances of misconduct "to be used to challenge a witness's reputation for truthfulness is committed to the discretion of the district judge." *United States v. Seymour*, 472 F.3d 969, 971 (7th Cir. 2007). Defendants argue that allowing Plaintiffs to cross-examine the accused officer with respect to the sustained finding that he/she made false statements on a police report would be more likely to cause the jury to conclude that the accused officer has a propensity to use force than to shed any light on his/her truthfulness. They also argue that Karina and the accused officer gave similar accounts of his/her use of force against her, so that there is no real need to assess the accused officer's credibility with respect to his/her account of his/her use of force.

The court agrees with Plaintiffs that the accused officer's sustained CR is probative of his/her truthfulness, and that this probative value—as distinct from its minimal value in demonstrating any of the Rule 404(b) exceptions—outweighs the potential that the jury will use this information to brand the accused officer as a violent police officer. The accused officer was specifically found to have provided false information by saying that he/she used force in response to the arrestee's attempt to resist arrest, when in reality the arrestee in the other incident had not been resisting. Here, the accused officer is likely to testify that he/she used the take-down and a certain level of force in response to Karina's obstruction of Daniel's arrest. The fact that he/she has been untruthful in the past regarding the reasons for his/her use of force is probative of his/her truthfulness in this case. *See Richman v. Burgeson*, No. 98 CV 7350, 2008 WL 2567132, at *7 (N.D. Ill. June 24, 2008). And because

the accused officer's version of the events is likely to diverge materially from Plaintiffs', his/her credibility is likely to be in issue. *See Seymour*, 472 F.3d at 971. Accordingly, Defendants' motion in limine number 19 is denied. But the court notes that Plaintiffs have not explained why it would be appropriate to call seven officers, as they have stated they plan to do, to lay the foundation for the sustained CR if it is only to be used as a cross-examination tool to shed light on the accused officer's truthfulness. Plaintiffs should be prepared to explain this or submit a revised witness list at the final pretrial conference.

### D. No. 20, To Bar Plaintiffs From Basing their Excessive Force Claims on Certain Facts and Offering Testimony Inconsistent with Plaintiffs' Criminal Convictions

Defendants seek to prevent Daniel and Karina Casares from presenting evidence at trial that is inconsistent with their criminal convictions which resulted from the altercation underlying Plaintiffs' claims. As a result of the Casareses' run-in with Defendants on October 6, 2006, Daniel Casares was charged with one count of battery to a police officer, 720 ILCS 5/12-3(a)(1), and two counts of resisting or obstructing a police officer, 720 ILCS 5/31-1. (R. 203, Exs. A & B.) The battery complaint charged Daniel with striking defendant officer Bernal "in the face with his fist, causing swelling and redness to P.O. Bernal's face." (Id. Ex. A.) Karina Casares was charged with resisting/obstructing arrest by failing "to obey a lawful order of dispersal by a person known to her to be a police officer, under such circumstances whereas she became loud and disruptive in an attempt to interrupt the police officer's investigation into narcotics activities." (Id. Ex. C.)

11

Following a bench trial, the presiding judge found Daniel guilty of the battery charge and of one of the resisting arrest charges, and found Karina guilty of obstructing a police officer. (Id. Ex. D.) In the course of his ruling, the trial judge found that:

> Mr. Casares was trying to defeat this arrest by unlocking and locking the doors of the car. I also believe that he struck Officer Bernal in the face. And I believe it was intentional. . . . As I watched Mr. Casares testify, I watched him lift up his arm with his fist closed in a matter [*sic*], moving his left arm up. I watched him do it right in front of me before this bench, so I believe it's possible he did it. I believe he did it.

(Id., Tr. at 160.) As to Karina, the judge found that she "sat on the hood of the car while the police are in the middle of a police investigation . . . [and] felt incumbent upon herself to interrupt their investigation which she had no right to do." (Id., Tr. at 161.)

The Casareses moved for reconsideration of their convictions. The trial judge held a hearing, during which the Casareses' attorney argued that Daniel's quadriplegia renders him physically incapable of unlocking or locking the car doors or punching a police officer as charged. The trial judge reversed his ruling only with respect to Daniel's conviction for resisting arrest, because the complaint charged him with resisting arrest in relation to an officer who was not involved in the aspect of the incident in which Daniel was accused of locking and unlocking his car doors to prevent his arrest. The judge declined to reconsider the battery conviction, stating that:

> Defense counsel argued that it was a[n] [in]voluntary muscle twitch that caused Daniel to strike Officer Bernal. I don't believe that. As I observed during the trial during his testimony, Mr. Casares' testimony, he was able to easily move his arm. I believe it was an intentional battery.

(Id. Ex. E, Tr. at 12.)  The judge also declined to reconsider Karina's obstruction conviction, finding that she tried to prevent the officers from arresting Daniel or impounding the car when she "sat on the hood of the car," "flailed her arms," and "was combative" with the officers.  (Id. at 12-13.)

In the current motion, Defendants argue that based on Illinois principles of collateral estoppel and the rule set forth in *Heck v. Humphrey*, 512 U.S. 477, 485-86 (1994), prohibiting plaintiffs from pursuing civil claims where a judgment in their favor "would necessarily imply the invalidity of [their] conviction[s]," Plaintiffs should not be allowed to present evidence at trial that conflicts with the findings underlying their criminal convictions. Specifically, they argue that Plaintiffs should not be allowed to present evidence that Daniel is incapable of making a fist or hitting someone with enough force to cause redness and swelling, or that his contact with Officer Bernal was the result of an involuntary muscle spasm.  Defendants also argue that Daniel should not be allowed to challenge whether he is physically able to lock and unlock a car door.  They also argue that Plaintiffs should not be allowed to present evidence that Karina did not physically interfere with the officers.

Defendants reach a little too far with respect to their collateral estoppel arguments. Here, Illinois law determines the collateral estoppel effect of the Casares's state convictions on their current section 1983 claims.  *See Toro v. P.O. R. Gainer*, 370 F.Supp.2d 736, 739 (N.D. Ill. 2005).  In Illinois the doctrine of collateral estoppel applies where "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question;

13

(2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party to or in privity with a party to the prior adjudication." *Bajwa v. Metropolitan Life Ins. Co.*, 804 N.E.2d 519, 532 (Ill. 2004). But as Plaintiffs point out, the Seventh Circuit has made clear that collateral estoppel does not apply to factual findings made in a criminal proceeding where the person against whom estoppel is to be applied did not have a chance to appeal from the decision incorporating those findings. *See Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1021-23 (7th Cir. 2006). In particular, where a person has been acquitted of the charges connected to the challenged factual findings, "it would be improper to give collateral estoppel effect to the pretrial ruling." *Toro*, 370 F.Supp.2d at 741. Accordingly, Defendants' motion is denied with respect to evidence which conflicts with factual findings the state judge made in connection with Daniel's obstruction charge. Specifically, the judge's findings that Daniel "was trying to defeat this arrest by unlocking and locking the doors of the car," (R. 203, Ex. D, Tr. at 160), or by "trying to continually lock the car doors," (Id. Ex. E, Tr. at 12), have no preclusive effect.

But Defendants' motion is granted with respect to evidence which conflicts with the specific factual findings the state judge made in connection with Daniel's battery conviction and Karina's obstruction conviction. In arguing that Daniel's battery conviction has no preclusive effect, Plaintiffs assert that the battery conviction did not depend on the judge's findings regarding Daniel's capabilities, and that even if it did, the judge did not specifically

14

find that Daniel is capable of making a fist or that he intentionally did so. But as noted above, the battery complaint charged Daniel with striking defendant officer Bernal "in the face with his fist, causing swelling and redness to P.O. Bernal's face." (R. 203 Ex. A.) The Illinois statute under which Daniel was charged requires a finding that the charged party "knowingly" causes bodily harm. 720 ILCS 5/12-3(a)(1). Thus Daniel's conviction resolved the question of whether Daniel's contact with Officer Bernal was involuntary against Daniel's version. The conviction also resolves against Daniel the question of whether he has the physical strength to cause swelling and redness. Moreover, the state judge's other factual findings were not as vague as Plaintiffs assert. The judge found that "it was intentional. . . As I watched Mr. Casares testify, I watched him lift up his arm with his fist closed in a matter [*sic*], moving his left arm up. I watched him do it right in front of me before this bench, so I believe it's possible he did it. I believe he did it." (R. 203, Ex. D, Tr. at 160.) Daniel had the opportunity to challenge these findings through his criminal appeal. Thus collateral estoppel precludes Plaintiffs from offering evidence that Daniel is incapable of making a fist, that he struck Officer Bernal involuntarily, or that he lacks the strength to cause any injury.

The only argument Plaintiffs raise against the collateral estoppel effect of the findings underlying Karina's obstruction conviction is their assertion that the state judge's findings that she sat on the car and flailed her arms are not broad enough to show that she physically interfered with the officers. Here the judge's findings are less specific. He said that Karina tried to prevent the officers from arresting Daniel or impounding the car when she "sat on

15

the hood of the car," "flailed her arms," and "was combative" with the officers. (R. 203, Ex.

E, Tr. at 12-13.) Because these findings do not illuminate whether or how Karina physically

interrupted the officers, the motion will be granted in part and denied in part with respect to

these findings. The motion is granted to the extent that Plaintiffs will be prevented from

contesting that Karina sat on the car or flailed her arms, but any objections as to the collateral

estoppel effect of broader characterizations of her conduct are best reserved for trial as the

testimony unfolds.

Even if Plaintiffs had successfully shown that collateral estoppel is no bar to evidence

regarding whether Daniel intentionally made a fist and hit officer Bernal or whether Karina

sat on the car and flailed her arms, Defendants persuasively argue that the *Heck* bar would

still preclude them from offering certain testimony along these lines. Under *Heck*, where a

judgment in favor of a plaintiff in a section 1983 action "would necessarily imply the

invalidity of his conviction or sentence," the action cannot proceed. 512 U.S. at 487; *see also*

*Skinner v. Switzer*, 131 S.Ct. 1289, 1298 (2011). The Seventh Circuit has made clear that

*Heck* does "not affect litigation about what happens after the crime is completed," including

whether the force police used in response to the underlying crime was reasonable. *Gilbert*

*v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008); *Vangilder v. Baker*, 435 F.3d 689, 692 (7th Cir.

2006). An excessive force claimant who was convicted of having struck the first blow is not

required to confess in open court to throwing the punch, and can proceed with an "argument

along the lines of 'The [officers] violated my rights by injuring me, whether or not I struck first.'" *Gilbert*, 512 F.3d at 902; *see also Evans v. Pokson*, 603 F.3d 362, 364 (7th Cir. 2010).

In *Gilbert*, a prisoner was disciplined for hitting a guard and later brought an excessive force claim based on his allegations regarding the guards' response. 512 F.3d at 900. The Seventh Circuit instructed the district court to use jury instructions to implement *Heck*, by informing "the jurors that Gilbert struck the first blow during the fracas at the chuckhole, that any statements to the contrary by Gilbert . . . or a witness must be ignored, and that what the jurors needed to determine was whether the guards used more force than was reasonably necessary to protect themselves." *Id.* at 902. Consistent with the Seventh Circuit's instructions in *Gilbert*, this court will not require Daniel to confess to the battery in order to proceed with his claim, but he will not be permitted to introduce evidence contrary to the state court's findings that he made a fist and intentionally struck Officer Bernal, causing redness and swelling. Similarly, Karina will not be permitted to testify that she did nothing to obstruct the officers while they were attempting to arrest Daniel. For all of these reasons, Defendants' motion in limine number 20 is granted in part and denied in part.

### E.     No. 21, To Bar Certain Testimony of Plaintiffs' Expert Richard Lazar, M.D.

Defendants move to bar the testimony of Plaintiffs' expert Richard Lazar on the grounds that his opinions are insufficiently reliable, conflict with the findings underlying Daniel's convictions, and pertain in part to matters outside the scope of his expertise. (R. 204.) In his expert report, Dr. Lazar opines that Daniel did not have the requisite strength

or flexion to make a fist or the strength to "deliver a blow of sufficient strength to leave redness and swelling on the face of another person." (Id. Ex. A at 5.) He further opines that Daniel did not have the ability to forcibly resist the defendant officers. (Id.) For the reasons set forth granting Defendants' Motion in Limine 20 in part, their motion to exclude Dr. Lazar's testimony is granted to the extent that he seeks to offer opinions inconsistent with the findings related to Daniel's battery conviction. Specifically, he will not be permitted to testify that Daniel was incapable of making a fist, of intentionally hitting someone, or of doing so with the strength required to cause redness or swelling.

This court is not persuaded by Defendants' argument that the remainder of Dr. Lazar's testimony should be excluded on the ground that it is insufficiently reliable. Expert testimony is admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 570 (1993), and its progeny if: (1) the witness is "qualified as an expert by knowledge, skill, experience, training, or education;" (2) the expert's "reasoning or methodology underlying the testimony" is sufficiently reliable; and (3) the testimony is relevant. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (internal quotations omitted). Defendants object to Dr. Lazar's testimony only under the second prong, arguing that his methodology is deficient because he never examined Daniel or watched the video recording of Daniel's deposition before giving his opinion regarding Daniel's physical abilities. But a physical examination of the patient is not a prerequisite to an expert's medical opinion. *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000).

Rather, reviewing medical records—as Dr. Lazar did here—is a permissible method for a medical expert to use to develop an opinion. *Id.*; *Paine ex rel. Eilman v. Johnson*, No. 06 CV 3173, 2010 WL 749860, at *3 (N.D. Ill. Feb. 25, 2010). Defendants object in particular to Dr. Lazar basing his opinion regarding Daniel's capabilities on his assessment that Daniel is a C7 quadriplegic, because according to Defendants, Daniel's video deposition and own testimony demonstrates that he is capable of doing things that Dr. Lazar identified as lying outside the capabilities of any C7 quadriplegic. Defendants make strong points that these potential inconsistencies render Dr. Lazar's opinion problematic. Defendants will have the chance to highlight potential inaccuracies by drawing them out through vigorous cross-examination at trial, thus leaving the jury to determine the weight that should be ascribed to Dr. Lazar's opinion.

Finally, Defendants argue that Dr. Lazar should be precluded from opining that Daniel did not have "the ability to be an effective combatant" and "was no match for three able bodied police officers," because they argue that these opinions lie outside the scope of his medical expertise. Although Dr. Lazar will not be permitted to testify regarding police procedures or what actions a police officer would need to take to subdue Daniel, he will be permitted to offer his opinion regarding Daniel's ability to move after the defendant officers had removed him from the car. To the extent that Dr. Lazar's testimony strays into the domain of proper police procedures or responses at trial, Defendants will be allowed to re-

raise this issue. For these reasons, Defendants' motion in limine number 21 is granted in part and denied in part.

### F. No. 23, To Bar Evidence Regarding the Circumstances of Daniel's Car Accident

Defendants ask the court to prevent Plaintiffs from eliciting testimony regarding the details of the 2002 car accident that left Daniel partially paralyzed. They also seek to bar testimony describing the details of his recovery process. Plaintiffs do not object to the motion to the extent that it precludes evidence regarding the details of the accident itself—such as the fact that it was caused by a drunk driver—but they argue that the details of Daniel's physical therapy and degree of recovery are highly relevant to the hotly contested issue of the level of Daniel's strength and the kinds of movements he was capable of making on the date of his arrest. According to Defendants, such testimony would be unduly prejudicial because its main purpose would be to garner sympathy from the jury.

This motion presents objections which are best left for trial, when the court will be in a better position to weigh the prejudicial effect against the probative value of specific lines of questioning under Federal Rule of Evidence 403. To grant Defendants' broad request before knowing what specific testimony Plaintiffs plan to introduce would risk excluding information the jury needs to evaluate Daniel's condition on the day of his arrest. Although the Defendants' point is well-taken that Plaintiffs should not be permitted to dwell on irrelevant details of Daniel's recovery process, whether and when his testimony crosses a line from probative to overly prejudicial is a question best resolved in the course of the trial.

Plaintiffs are warned, however, not to introduce any testimony that may contradict Daniel's criminal convictions. Defendants' motion in limine number 23 thus is granted to the extent that Plaintiffs do not object to the exclusion of details surrounding Daniel's accident, but denied in all other respects.

## II. Plaintiffs' Motions in Limine

### A. No. 5, Allegations of Drug and/or Alcohol Use by Plaintiffs and/or any Witnesses

Plaintiffs seek to bar Defendants from introducing evidence of what they describe as the parties' or witnesses' pre-occurrence or post-occurrence drug or alcohol consumption. Plaintiffs argue that this is inadmissible character evidence under Federal Rule of Evidence 404(b). The court understands Plaintiffs' motion to be directed to any drug or alcohol use that occurred on any date other than October 6, 2006, the date of the underlying incident. But Defendants' response is directed almost entirely to their argument that they should be allowed to present evidence that Daniel and two other witnesses used marijuana and/or alcohol on the day of the incident. That argument is addressed below in part C, where the court discusses Plaintiffs' request in motion number 22 to exclude evidence of drug and alcohol use on the date of the underlying incident. Whether Daniel and the other witnesses have used illegal drugs or abused alcohol on days other than the date in question carries almost no probative value and would tend to lead the jury to conclude that they are bad characters. *See United States v. Spano*, 421 F.3d 599, 606 (7th Cir. 2005); *Cobige v. City of Chicago*, 752 F.Supp.2d 860, 877-78 (N.D. Ill. 2010). Because Defendants have not

developed any argument to show how pre- or post-occurrence drug and alcohol use falls within any of the exceptions carved out in Rule 404(b), Plaintiffs' motion in limine number 5 is granted.

### B.     No. 19, Plaintiff's Alleged Statements in the Ambulance

Defendant Officer Szubski testified in his deposition that while he was accompanying Daniel to the hospital in an ambulance directly following the incident, Daniel made two threats.  First, he said, "Next time I see your partner I slap her again."  (R. 208, Ex. A. Szubski Tr. at 113, ln. 1-5.)  Second, he said, "I'll get you, I'll get my boys and we'll come to your house and rape your daughter and make you watch."  (Id.)  Plaintiffs seek to have this court exclude this evidence on the grounds that it is irrelevant, unduly prejudicial, and constitutes hearsay.  Fed. R. Evid. 401-03, 802.  Defendants object, arguing that Daniel's statements constitute party admissions and therefore should not be excluded as hearsay.  They further argue that Daniel's statements are relevant to show that he acknowledged hitting Officer Bernal (an act he later denied having committed), to contradict his assertions that he lost consciousness and was unaware of his surroundings during the ambulance ride, and to show his bias against the defendant officers.

Daniel's statements to Officer Szubski in the ambulance are party admissions—statements made by and offered against a party—and thus are not excludable on hearsay grounds.  *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Reed*, 227 F.3d 763, 769-70 (7th Cir. 2000).  They are also relevant for the reasons given by Defendants.  Whether

their probative value substantially outweighs their unfairly prejudicial effect under Rule 403, however, is a closer call. The court concludes that the balancing weighs in favor of Defendants. Although this court's ruling on Defendants' motion in limine 20 takes the question of whether Daniel intentionally hit Officer Bernal off the table, his threat to slap Officer Bernal "again" counteracts Daniel's assertion that he lost consciousness or was unaware of what was happening after his arrest. That he was sufficiently lucid to acknowledge what he had done and to threaten to do it again is evidence the jury can use to determine his credibility on that point and to draw conclusions regarding his state of mind shortly after the incident. The rape comment also demonstrates Daniel's lucidity and is probative of his potential bias against the officers. And although both statements are certainly ugly and threatening, they are not so inflammatory as to unfairly distract the jury into concluding that Daniel is a violent or unsavory character. As Plaintiffs point out in their response, given Daniel's condition, the jury is unlikely to conclude that Daniel's rape threat was sincere. Because the probative value of Daniel's statements in the ambulance outweigh any unfair prejudice, *see* Fed. R. Evid. 403, Plaintiffs' motion in limine number 19 is denied.

### C.    No. 22, Preclude and/or Bar Evidence/Argument Regarding Allegations that Plaintiffs Were Under the Influence of Drugs and/or Alcohol at the Time of Incident

As alluded to above in part II-A, Plaintiffs move this court to exclude any evidence that Plaintiffs were under the influence of alcohol or drugs at the time of their altercation

with Defendants.[2]  They assert that there is no evidence that Plaintiffs were under the influence of drugs or alcohol when they encountered Defendants, and thus argue that any allusions to their use of drugs or alcohol on that day should be excluded under Rules 401 through 404.  In response, Defendants have submitted for the court's review transcripts of the depositions of Michael Day and Michael McGrath, two paramedics who treated Daniel at the scene and in the ambulance on the way to the hospital.  McGrath testified that he wrote in his report that Daniel admitted to smoking marijuana, but when questioned extensively on that point by Daniel's attorney, he said that he could not be sure whether the notation was based on past use or use on that day.  (McGrath Dep. at 91-96.)  McGrath also testified that although he noted that Daniel smelled of alcohol, he could not say for sure whether Daniel was under the influence.  (Id. at 94-96.)  Day's testimony is much less equivocal.  He stated clearly that he observed that Daniel smelled of alcohol and was being belligerent during the ambulance ride.  (Day Dep. at 49.)  In fact, he said that he observed a "strong" smell of alcohol on Daniel's breath.  (Id. at 49, 51.)  Day testified that Daniel appeared to him to be under the influence of alcohol based on his behavior, glassy eyes, and slurred words.  (Id. at

---

[2]  In their motion number 5, Plaintiffs sought to exclude pre- and post-occurrence drug and alcohol use by the driver of and another passenger in the car in which Daniel was riding.  To the extent their omission of these individuals from the current motion is an oversight, Plaintiffs may submit a brief supplemental motion regarding the driver's and passenger's drug or alcohol use or possession as it relates to the underlying incident by no later than May 24, 2011.  Defendants may file a response thereto by May 26, 2011.

51-53, 62.)  When pressed to describe whether he believed him to be slightly drunk or "a little buzzed," Day clearly stated that "He seemed drunk."  (Id. at 61.)

After Defendants presented this testimony, Plaintiffs submitted two supplemental memoranda making several valid points about how Day could have confused Daniel's medical symptoms with signs of intoxication.  (R. 244, 247.)  They will have ample opportunity to make those points through vigorous cross-examination at trial.  But for purposes of this motion, what matters is that a jury could conclude from Day's testimony that Daniel was intoxicated to the point where his condition impacted his perception of the events as they unfolded.  Where there is reason to believe that alcohol or marijuana had seriously impaired a witness's memory of the events to which he is testifying or prevented him from understanding the events at the time they occurred, evidence of his drug or alcohol use is admissible.  *Spano*, 421 F.3d at 606.  Here Day's testimony is relevant not only for those reasons, but because evidence that Daniel was intoxicated makes it more likely that he acted in the way the Defendants say he did.  *See Saladino v. Winkler*, 609 F.2d 1211, 1214.  In other words, the evidence helps to explain the facts and circumstances Defendants confronted before, during, and after the arrest.  *See Graham*, 490 U.S. at 397.  And although it is true as Plaintiffs say that Day's evidence could "paint the Plaintiffs in a bad light," that prejudicial impact is substantially outweighed by its probative value.  *See* Fed. R. Evid. 403.  Accordingly, Plaintiffs' motion in limine number 22 is denied.

**D.      No. 24, Finding and/or Guilty Verdict of Battery Against Plaintiff Casares**

Plaintiffs argue that Daniel's battery conviction should be excluded because, according to them, it is irrelevant to the question whether Defendants' actions were objectively reasonable. They argue that because the conviction was not a fact known to Defendants when they used force against Daniel, it is not a factor to be considered in weighing whether the officers' conduct was reasonable. They also argue that this evidence is "overly prejudicial" under Rule 403. Defendants object, arguing that "the criminal conviction removes any factual dispute related to the punch from contention." (R. 220, Defs.' Resp. at 2.)

As explained above in part I-D, Plaintiffs will be collaterally estopped and precluded by the rule in *Heck* from presenting evidence that conflicts with Daniel's battery conviction. The fact that Daniel intentionally struck Officer Bernal is relevant to explain the chain of events leading up to the officers' use of force. For example, under quite similar circumstances the *Gilbert* court instructed the district judge to inform jurors that the plaintiff in an excessive force case had "struck the first blow," 512 F.3d at 902. Whether the added fact of the conviction will be introduced at trial will turn on how Plaintiffs present their case, and so any determination regarding the admissibility of the conviction itself is best left for trial. As Plaintiffs request, if evidence regarding Daniel's battery conviction is introduced at trial, Plaintiffs will be permitted to introduce evidence showing that he was acquitted of

obstruction and resisting arrest. But in all other respects, Plaintiffs' motion in limine number 24 is denied.

### E. No. 26, Testimony and Expert Report by Dr. Gary M. Yarkony

Plaintiffs move to exclude Defendants' expert witness Gary Yarkony, arguing that his opinion should be automatically excluded because his report does not comply with Federal Rule of Civil Procedure 26(a)(2)(B). Rule 26(a)(2)(B)(v) and (vi) require an expert witness to include in his report a list of cases in which the witness has testified in the previous four years and a statement detailing the compensation he received to produce the report and provide testimony. Defendants concede that Yarkony's original report omitted those details, but they have informed this court that they provided Plaintiffs' counsel with that information after they reviewed this motion in limine. And as Defendants pointed out at the hearing on the parties' motions in limine on May 13, 2011, Plaintiffs have had Yarkony's report for several months and never lodged an objection or brought the deficiency to Defendants' attention until they filed the current motion. Nor did they move for sanctions as provided in Federal Rule of Civil Procedure 37(c)(1). Thus this case is unlike those cited by Plaintiffs, in which parties or experts submitted untimely reports or delayed providing information even after it was requested. *See, e.g, Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 738 (7th Cir. 1998); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Benficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001). Rather, this motion represents a fairly transparent attempt on Plaintiffs' part to play "gotcha" with the hope of knocking out

evidence on the eve of trial. Because Plaintiffs could have ameliorated any harm the deficiency caused by requesting the missing information when they initially received the report or in any of the weeks thereafter, Plaintiffs motion in limine number 26 is denied.

### Conclusion

For the foregoing reasons, the parties' motions in limine are granted in part and denied in part.

**ENTER:**


_____
**Young B. Kim**
**United States Magistrate Judge**